### ELLEN CHOSE ROBERTS

*v.*

### LEWIS B. SCULL.

[Filed May 27th, 1899.]

1. Where an owner sells a portion of his lands with a covenant restricting its use, a subsequent grantee of another portion from the same owner may enforce the covenant against the original grantee and against all subsequent purchasers from him, with notice of the covenant.

2. ·A·prior purchaser from the original owner cannot enforce a restriction imposed by the latter upon a lot subsequently conveyed, unless in the prior deed there was a grant of a right in the residue of the land retained by the vendor, or a stipulation that the restrictions put upon the lot sold by the prior deed should also be imposed upon the remaining property when sales should be made to subsequent purchasers, or other indications that all the lots were sold as parts of a uniform building scheme.

3. To justify the issuing of a preliminary injunction the case shown by the complainant must exhibit a right free from doubt or reasonable dispute.

On bill. Order to show cause and answering affidavits.

*Mr. Allen B. Endicott,* for the complainant.

*Messrs. Thompson & Cole,* for the defendant.

GREY, V. C.

The complainant in this suit is the owner of a house and lot situate on the east side of United States avenue in Atlantic City. She alleges that forty years ago one Brown, being the holder in fee of a tract of land of which her lot formed a part, opened a street, now called United States avenue, and built two houses on each side of it, facing on said avenue and set back from the street or property line a distance of thirty-two feet, and afterwards sold lots on either side of said avenue; and that in each of the deeds conveying those lots there was inserted a condition that the house or houses to be built thereon should be in keeping with those already built by him and set back a distance of thirty-two feet from the property line, and that no stables or outbuildings should be erected on any of said lots; and that as a result of said restrictions United States avenue has been built up with cottages in good style, and said lots have been kept free from all buildings except such as face on United States avenue.

Brown, on the 19th of October, 1888, conveyed to one James F. Graham the lot at the southeast corner of Pacific and United States avenues, running back from United States avenue to Pacific avenue with a uniform width of eighty feet. This lot is marked "Harris" on the annexed map. The deed to Graham contained the following restriction :

"Under and subject nevertheless to the following condition and restrictions: That the house erected upon said lot shall be of good style, and in keeping with other properties on the said United States avenue, to be built in a line with the other houses and at a distance of not less than thirty-two feet from the line of United States avenue, and that the depth or width of the porch shall not be more than eight feet; that there shall be no stable or outside privy erected upon the same, and that no building erected upon the said lot shall be used as a hotel, tavern, boarding-house or other like purpose."

The last-named deed was duly recorded. By intermediate conveyance this lot came to be held by Eva L. Harris, who, on the 20th of January, 1899, conveyed to the defendant, Lewis B. Scull, a portion of that lot, not facing on United States avenue, but located at the other end of the lot, fronting forty feet on Pacific avenue and eighty feet on Delaware avenue. This lot is marked "Scull" on the annexed map. The complainant alleges that Scull's lot is subject to the restriction above quoted, as contained in the original deed from Brown to Graham, and that in the deed from Mrs. Harris to the defendant, Scull, there is also contained this additional restriction:

"Subject nevertheless to a restriction (to which the party of the second part agrees) that the foundation wall of the cottage to be built upon the above-described lot shall not be more than four feet east of the most westerly line of the said lot."

The complainant, Ellen C. Roberts, is the owner of the lot of land fronting on United States avenue, which lies immediately adjoining to the above-mentioned Harris lot on the south, along its whole length, and which is marked "Roberts" on the annexed map. She alleges that Brown, in 1882, conveyed the lot she now owns to one Ladner; that in the deed Brown inserted the same covenants and restrictions and conditions as those particularly set forth above, as contained in the deed from Brown to Graham, and that she took title to her lot by intermediate conveyance from Ladner, with full knowledge of the restrictions imposed upon it in the deed to Ladner, and was induced to purchase it because of the fact that the lands immediately north of her, and indeed all lots on both sides of United States avenue, were subject to said restrictions, and that the restrictions on her lot, and on the lot immediately adjoining her on the north, formed part of the purchase price of said lots respectively.

Roberts v. Scull.

The situation of the lots in question is indicated by the following diagram :

The complainant further alleges that the defendant, Scull, is about to erect a cottage or dwelling-house on the lot of land conveyed to him by Mrs. Harris, and she alleges further that such a structure will be a great detriment to her, because it will interfere with the view of Delaware avenue, and that it is a violation of the covenant and restriction above referred to, because it will not be in a line with the other houses on United States avenue, or in a line with the house already erected on the Harris lot, and that it is also a violation of the covenant because it is not in keeping with the general plan and scheme with which

Roberts v. Scull.

United States avenue was opened and lots sold and houses built thereon; that she has given notice to Scull that the erection of his house as proposed is a violation of the restriction, "unless it faces United States avenue and sets back thirty-two feet from the property line;" and threatening him with an application for an injunction to restrain him from building as proposed.

The complainant prays that the defendant may be restrained from erecting any building on the lot of ground conveyed to him by Mrs. Harris. An order to show cause has been allowed, and upon the coming in of the rule argument was heard upon application for a preliminary injunction to restrain the defendant from erecting any building on his lot.

The defendant, Scull, for showing of cause, files an affidavit admitting his intention to build a dwelling-house on his lot, to front on Pacific avenue, which dwelling-house, he declares, will be attractive in appearance and as expensive, approximately, as the other buildings on United States avenue. He denies that the lots on United States avenue have been kept free from structures, except such as faced United States avenue, and says that on the easterly side, at the ocean end of United States avenue, there has, for five years past, been a building, not a cottage or dwelling-house, used for amusement purposes, and on the westerly side, at the ocean end of United States avenue, there are bath-houses, which have been so used for five years; that there are also two buildings on said avenue which are being used for boarding-house purposes, one of which has been used for the past three years, and that none of said buildings are of good style or in keeping or built in line with the other properties on said avenue.

The defendant also files an affidavit of a civil engineer showing that the complainant's own property is built in breach of the restriction above quoted, in that it is but thirty-one feet back of the line of United States avenue, and that the porch on her property is ten feet in width or depth; that several other properties are nearer the line of United States avenue than thirty-two feet, and also showing that there are other buildings on the United States avenue lots which are in breach of the

restriction because they have been used, some of them, for boarding-house purposes for a number of years; and that Brown had conveyed to other parties lots on the easterly side of United States avenue, by deeds which contained no such restrictions as to keeping the building back thirty-two feet from the property line, as are imposed by the deeds to the complainant's and defendant's grantors.

It appears to be settled law in the state that restrictive covenants, of the character set forth in the bill, will be enforced in equity, not only against the original grantee, but also against all subsequent purchasers with notice of the covenant. *De Gray* v. *Monmouth Beach Co., 5 Dick. Ch. Rep. 329; Hayes* v. *Waverly, &c., Railroad Co., 6 Dick. Ch. Rep. 345,* and cases there cited.

The parties who may enforce such restrictive covenants are the original grantors with whom they were made, and all subsequent purchasers of the lands to be benefited by them. The parties against whom they may be enforced are the grantees who accept deeds containing the restrictions, and all those who subsequently purchase the restricted lands with notice of the covenant.

The principle upon which a person not a party to a restrictive covenant is permitted to enforce it, is based upon the idea that the subsequent purchaser of lands to be benefited by the enforcement has made his purchase and paid his consideration in the expectation of the benefit to accrue to the land bought, from the observances of the restriction imposed by his grantor upon the use of the lots previously conveyed to the covenantor, and no injustice is worked upon the covenantor or his assigns with notice of the covenant by restraining them from using the land in a manner inconsistent with the contract under which they obtained the title and which fixed the price they paid with relation to the restrictions imposed. *Tulk* v. *Moxhay, 2 Phil. 774.* That is, the prior purchaser from the common grantor, by reason of the restrictions imposed, paid less price for his land; the party who subsequently purchased from the common grantor a part or the whole of the land to be benefited by the restrictions, bought in consideration of the benefits coming to his lot because of the restrictions. This relation is such a privity as

26

supports an equity in the subsequent purchaser of the lot benefited by the covenant to enforce it.

But this rule, while operative to enable a subsequent purchaser of land to be benefited by a restrictive covenant to enforce it against the prior purchaser, who made it, and against his assigns, with notice of it, does not work inversely to support the claim of a prior purchaser from the original owner to enforce a restriction imposed by the latter upon a lot subsequently conveyed. *De Gray* v. *Monmouth Beach Co., 5 Dick. Ch. Rep. 329.* The prior purchaser did not buy in expectation of any benefit to be derived from the subsequent covenant not yet in existence, nor did the subsequent purchaser make his covenant with the common grantor with relation to lands which the latter had previously conveyed and in which he had no interest.

In order to entitle prior purchasers from a common vendor, or those claiming under them, to enforce such covenants, it must be shown that they are parts of a general plan adopted for the development and improvement of the property by laying it out in streets and lots, prescribing a uniform building scheme, regulating size and style of houses, or uses to which the buildings may be put. *De Gray* v. *Monmouth Beach Co., supra.* When there is such a general plan and covenants imposing uniform restrictions, each purchaser, as he buys his lot and accepts the restrictive covenant, pays his purchase-money in consideration of, and relying upon, the subsequent execution of the general plan by the imposition of like covenants upon succeeding purchasers. This equity arises in favor of a grantee under the restriction of the uniform plan, as well against the original owner who promulgates and sells lots on the general plan and attempts to make subsequent conveyances in avoidance of it, as against a grantee who accepts a deed with the restrictions, and does acts in breach of them.

In the case before me, Brown was the common grantor. He made the deed to Ladner for the complainant's lot in 1882, imposing the restrictions above recited. He made the deed to Graham for the Harris lot, of which the defendant's land is a part, in 1888. There is no proof whatever that when the deed

for complainant's land was made there was either a grant of any right in the residue of the land retained by the grantor, or a stipulation that the restrictions put upon this first lot should also be imposed on the remaining property when sales were made to subsequent purchasers. The complainant's affidavit declares that she, Mrs. Roberts, purchased with the information and belief that the lots on United States avenue were subject to the restrictions. The question must, however, be determined not by her expectation in her purchase from Ladner or from his grantee, but by the contract or action of Brown, the original owner of the common property. The complainant herself does not appear to have had either dealings with or original knowledge of the transactions with Brown. No assurance of any kind from Ladner, or those from whom Mrs. Roberts received her deed, that Brown's other lots were charged with the restrictions, could be of any effect to put her so in privity with Brown's subsequent grantees that she would have an equity to enforce the covenant in Brown's deed to Graham made subsequently to Brown's deed to Ladner. The complainant's right to enforce the restrictions must be based entirely upon rights vesting in her under Brown's deed to Ladner, and which were conveyed by, but did originate in, the deed of Ladner to her. The Brown to Ladner deed, under which complainant claims, was made in 1882, and the covenants she seeks to enforce against the defendant are those in the Brown to Graham deed, made in 1888. She is, therefore, exactly in the position of the complainant in *Mulligan* v. *Jordan, 5 Dick. Ch. Rep. 363.* She cannot enforce the subsequent covenant in the Graham deed, because it was not made for the benefit of her lot, which had been previously conveyed by Brown to Ladner.

The only ground upon which she can assert any equity to enforce these subsequent covenants must rest upon proof that they were made with relation to a general plan of improvement by the imposition of uniform restrictions for the benefit of the property included in the plan, with reference to which all bought, and the obligation to observe which is binding upon all.

There is a suggestion in the bill that there was such a general

plan of improvement, but the supporting proof depends entirely upon the complainant's unaided. deposition. She was not a purchaser from Brown, the common grantor, nor does she appear to have any knowledge of his original design in laying out the property. She testifies as to her information and belief as of the time when she purchased from Ladner, or some subsequent grantee, that the lot north of her and those on United States avenue were subject to covenants

"that no dwelling-house could be erected on any of said lands except those that front on United States avenue, and set back thirty-two feet from said avenue."

No map of the lots is shown marking the building line, nor is there any other proof of any action by the common grantor, Brown, indicating a design on his part to develop the land upon a uniform plan of which the covenants in the deed of Brown to Graham for the defendant's lot, fixing the building line, &c., formed a part.

The complainant herself does not appear to have any knowledge upon the subject save from hearsay. The coincidence that all the deeds conveying any portion of the property contained the same covenants would not, if it were true, be sufficient of itself to show that the covenant made by Graham on receiving his deed from Brown in 1888 was intended to be for the benefit of Ladner's lot, who had bought from Brown in 1882, six years before. *Mulligan* v. *Jordan, 5 Dick. Ch. Rep. 363.*

The proof submitted does not support the claim that the covenants were part of a general building plan.

The construction which the complainant puts upon the Graham covenant, that it prohibits the erection of more than one building on the lot sold, and that the building in question must front on United States avenue, is not so clear that it is free from doubt. The covenant speaks of "the house erected upon said lot" and prescribed its style and distance from the line of United States avenue. It forbids the erection of a stable or outside privy, but does not otherwise prohibit a second

building on the lot. The declaration that " no building erected upon the said lot shall be used as a hotel, tavern, boarding-house or other like' purpose " is not expressed to be limited to " the house " before referred to, and appears to recognize the possibility that other buildings might be erected on the lot, none of which should be used for the prohibited purpose. It is also doubtful if the covenant prohibits the building of a house to front otherwheres than on United States avenue. Such location is not in terms forbidden and can only be implied by holding the covenant to restrict the use of the lot to the erection of one house.

The proofs submitted by the defendant refute in several essential particulars the claims made by the complainant. The alleged uniformity of the plan of improvement is denied, and it is shown that Brown conveyed to at least one grantee a lot on the easterly side of United States avenue without imposing any restrictions whatever as to keeping his house thirty-two feet back from the property line of that avenue.

The defendant's affidavits also show that in the actual improvements erected on the lots conveyed by Brown on United States avenue, nearly every one of the restrictions named in Graham's covenant have been violated. Buildings have been erected at the ocean end of United States avenue which do not face on that avenue, and have been for years used as boarding-houses, and which are not built in good style or. in keeping with the other buildings on that avenue. Porches on six lots, including the complainant's, are wider than the eight feet named in the covenant. At least two of the houses are nearer to the line of United States avenue than the thirty-two feet prescribed by the covenant, and one of these latter is the house of the complainant herself.

Vice-Chancellor Green, in *De Gray* v. *Monmouth Beach Co.*, *5 Dick. Ch. Rep. 329*, declares the equity of a complainant, in cases of this character, to spring from the presumption that he has purchased and paid for his lot, relying upon the general plan prescribing the restrictions for the benefit of all the purchasers, and that while he is bound by and observes the cove-

nant, it would be inequitable to allow another owner, subject to the same restrictions, to violate it. But in the case at bar the complainant, on her own lot, maintains a house which is erected in breach of the very covenant which she seeks to compel defendant to observe.

The order to show cause should be dismissed, with costs.