[Civ. No. 2321.   Second Appellate District, Division One.—October 9, 1919.]

## T. M. TELANDER, Respondent, v. TUJUNGA WATER & POWER COMPANY (a Corporation), Appellant.

[1] CONTRACTS—AGREEMENT TO FURNISH WATER—BREACH—ACTION FOR DAMAGES—ALTERATIONS IN INSTRUMENT—EVIDENCE.—In an action for damages for breach of a contract to furnish water for irrigation and domestic use upon a certain tract of land, an objection to the introduction in evidence of the contract, based upon the fact that certain printed matter therein had been stricken out, is with-

out merit where there is nothing to indicate that the erasures of the printed lines were made after the execution of the instrument, where the parts stricken out are not material to the question in dispute, and it appears that the striking out of the matter was to make the contract comply with the terms of a preliminary contract entered into between the parties.

[2] ID.—ERROR IN DEED—WAIVER OF OBJECTION.—In such action, an objection to the admission in evidence of the deed to plaintiff based on the fact that the contract for the water right was made by the "Tujunga Company" to plaintiff's predecessor, whereas the deed in question refers to a water right deeded to plaintiff's predecessor by the "Tujunga Water Company," cannot be urged for the first time on appeal.

[3] ID.—SALE OF WATER SYSTEM—ASSUMPTION OF GRANTOR'S OBLIGATIONS.—Where a water company acquires the water rights, irrigation plant, and system of another company, with full knowledge of a contract by which the latter company was bound to render certain water service, it takes the same impressed with the obligation to render such service, notwithstanding there is no express covenant in the grant as to the assumption of the obligation of the grantor.

[4] ID.—FAILURE TO FURNISH WATER—LOSS OF CROP—MEASURE OF DAMAGE—EVIDENCE.—While the true measure of damage for loss of crops, due to a breach of contract for furnishing water, is to determine the probable yield and market value of the crop, and deduct therefrom the cost of producing and marketing the same, where the plaintiff introduces evidence as to the value of the crop in the field, and there is no further showing as to the cost necessary to handle such crop, the court is justified in accepting plaintiff's figures as tending to establish the amount of damage sustained.

[5] ID.—SHORTAGE OF RAINFALL—DISREGARD OF PREFERENTIAL RIGHTS OF PLAINTIFF—EVIDENCE.—In an action for damages for breach of a contract to furnish water for irrigation and domestic purposes, the court is justified in ignoring the testimony of defendant's witness that a shortage of rainfall was the cause of the company's failure to supply water to plaintiff where the testimony further shows that during the months when the company failed to furnish any water to plaintiff it was supplying water to other lands and to other parties for irrigation, domestic use, and other purposes contrary to the provisions of the contract under which plaintiff was entitled to water.

APPEAL from a judgment of the Superior Court of Los Angeles County. Leslie R. Hewitt, Judge. Affirmed.

4. Measure of damages for breach of contract to furnish water for irrigation, notes, 19 L. R. A. (N. S.) 938; 31 L. R. A. (N. S.) 743.

The facts are stated in the opinion of the court.

F. E. Davis for Appellant.

John Beardsley and A. B. Shaw, Jr., for Respondent.

SHAW, J.—In this action plaintiff sought to recover from defendant damages in the sum of $1,025, alleged to have been sustained on account of defendant's breach of a contract, whereby it is alleged it was obligated to furnish him a supply of water for irrigation and domestic use upon a certain tract of land. The appeal is by defendant from a judgment in favor of plaintiff.

As appears from the record, the material facts are: That a corporation known as Tujunga Company was the owner of a tract of land designated as Hansen Heights, for the irrigation of which, by means of pipe-lines and a water system constructed by it, it claimed the right to divert the waters of the Tujunga River. As such owner of said tract of land and the waters of the Tujunga River, it, about February 1, 1910, sold and conveyed to one H. H. Miller lots 23 and 34 of said tract, and at the same time executed a contract to the grantee of said lots whereby it agreed to sell and deliver to the purchaser thereof a supply of water for irrigation and domestic use thereon, which deed of conveyance and contract were duly recorded; that about October 30, 1910, Miller conveyed said lots 23 and 34 of Hansen Heights, together with all water rights conveyed to him by the Tujunga Company, to the plaintiff herein, and thereafter, to wit, on or about March 9, 1911, the Tujunga Company, by a deed duly executed and recorded, conveyed to the defendant herein, the Tujunga Water & Power Company, all of its water rights, pipe-lines, conduits, and irrigation system so constructed by it for the diversion and conveying of water for the irrigation of the lands in the tract known as Hansen Heights, and through and by means of which said grantor had theretofore been supplying water to said plaintiff and his predecessor in interest for use upon said lands; that pursuant to said conveyance defendant took possession of said water system and delivered a supply of water to plaintiff for use upon said lots 23 and 34 up to the summer of 1912, when, during the summer of said year and the summer of 1913, it refused to

deliver any water to plaintiff; that by reason of its failure so to do plaintiff was deprived of the use of water for irrigation and domestic use, as a result of which his crops were damaged and he was compelled to obtain from other sources a supply of water for domestic use.

For the purpose of showing that plaintiff had succeeded to the ownership of the water right described in the contract made by the Tujunga Company with Miller, a deed from the latter to plaintiff, conveying said land and describing the water right thereby conveyed as that deeded to the property (lots 23 and 34, Hansen Heights), by the "Tujunga *Water* Company," was received in evidence over defendant's objection that it was incompetent, irrelevant, and immaterial. [1] This ruling was followed by another of which defendant complains, admitting in evidence the contract made by the "Tujunga Company" to furnish a supply of water to Miller for use upon the lots. The objection to the competency of the contract as evidence was based upon the fact that certain printed matter therein had been stricken out, and it is now claimed that under the provisions of section 1982 of the Code of Civil Procedure, it should not have been admitted in evidence. This section provides that "the party producing a writing as genuine which has been altered, or appears to have been altered, after its execution, in a part material to the question in dispute, must account for the appearance or alteration"; otherwise the writing cannot be received in evidence. There is no merit in the contention, for several reasons: First, there was nothing to indicate that the erasures of the printed lines were made after execution of the instrument; second, the parts stricken out were not material to the question in dispute, namely, the conveyance of the water right; and, third, it did appear that the striking out of the matter was to make the contract comply with the terms of a preliminary contract entered into between the parties. [2] The objection now urged for the first time to the deed from Miller to plaintiff is based upon the fact that the contract for the water right was made by the Tujunga Company to Miller, whereas the deed refers to a water right deeded to plaintiff's grantor by the Tujunga *Water* Company. That in referring to the maker of the contract as the Tujunga *Water* Company, instead of the Tujunga Company, was a mistake of the scrivener in drawing the deed is apparent, and

the failure to explain the error was no doubt due to the fact that defendant at the time raised no objection based thereon. Under these circumstances, where the real ground of objection was not pointed out, appellant should not for the first time in this court be heard to complain thereof.

[3] The Tujunga Company, as shown by the evidence, was originally the owner of both the land and water rights, both of which, by a proper deed, it conveyed to Miller. Plaintiff by the deed from Miller succeeded to his rights, and, in the absence of any transfer by the Tujunga Company, he, as owner of the land and water right, would be entitled to the service which the company had contracted to render to Miller. The defendant herein, in acquiring from the Tujunga Company the water rights, irrigation plant, and system of the Tujunga Company, took the same impressed with its obligation to furnish water to Miller and his grantee, as to which obligation of its grantor it had full knowledge of the contract theretofore made, and, notwithstanding the fact that there was no express provision in the grant as to the assumption of the grantor's obligation to deliver water, it was bound thereby. In 40 Cyc., page 835, it is said that "a purchaser of the ditch or canal with knowledge of such a previous grant [as here made] will be bound by the grantor's covenants." (See, also, *Hunt* v. *Jones,* 149 Cal. 297, [86 Pac. 686]; *Grand Valley Irr. Co.* v. *Lesher,* 28 Colo. 273, [65 Pac. 44].) In 40 Cyc., page 749, it is said: "A corporation, whether private or public, purchasing water rights, ditches, and a canal system, takes subject to the duties and burdens of which it has notice. The rights of the grantee are generally available against all successors in the title of the grantor, except it may be *bona fide* purchasers without notice." It would be a monstrous proposition to hold, as contended for by appellant, that, after its grantor had sold the entire tract of land, including lots 23 and 34, and conveyed therewith "water rights," together with an agreement to deliver a stipulated amount of water by means of a system of dams, reservoirs, pipe-lines, and conduits constructed for the purpose of rendering such service, it might sell its water system to another company which, in the absence of express covenants to assume such obligations, would take it stripped and freed of all rights and obligations of its predecessor in interest, and thus use the plant in the perpetration of a like fraud.

The evidence introduced as to the damage sustained by plaintiff is meager and unsatisfactory. [4] As claimed by appellant, the true measure of damage for loss of crops, due to a breach of contract for furnishing water, is to determine the probable yield and market value of the crop, and deduct therefrom the cost of producing and marketing the same. (*Teller* v. *Bay & River Dredging Co.*, 151 Cal. 209, [12 Ann. Cas. 779, 12 L. R. A. (N. S.) 267, 90 Pac. 942].) In the case at bar plaintiff's evidence shows the loss of crops, to wit, alfalfa hay, and that the value of this hay in a loose state in the field was $15 per ton. Assuming that some expense would have been incurred in producing the hay and cutting it, it was defendant's duty to have produced, either independently or upon cross-examination, evidence bearing thereon. In the absence of so doing, the court acted upon the only evidence before it, and, since it appeared that loose hay in the field which would have been produced was of the value of $15 per ton, the court, in the absence of any further showing, was justified in accepting it as tending to establish the amount of damage sustained.

And likewise as to the complaint made upon the damage sustained by plaintiff for failure to obtain water for domestic use. His testimony tended to show that the damage due to the loss of water for such purpose was five hundred dollars. It cannot be said that such evidence was insufficient to justify the award of $75 on account of the damage thus sustained.

[5] The water contract whereby the Tujunga Company agreed to furnish Miller with water contained a provision as follows: "Nothing herein contained shall be construed as binding the seller to furnish said water if prevented by earthquake or other natural causes beyond its control." While defendant did not allege that its breach of the contract was due to earthquake or natural causes beyond its control, it did produce Dr. Hansen, the manager of the company, who as a witness testified that the cause of the failure to furnish water to plaintiff was drought and lack of rainfall; but it further appeared from the testimony of this witness that during the months when the company failed to furnish any water to plaintiff it was supplying water to other lands and to other parties for irrigation, domestic use and other purposes, contrary to the provisions of the contract under which plain-

tiff was entitled to water. In other words, its duty to plaintiff took precedence over other parties, whose rights under the contract to water were only when there was a surplus and after plaintiff had received his supply of water. Under these circumstances the court was justified in ignoring the testimony of Dr. Hansen that a shortage of rainfall was the cause of the company's failure to supply water to plaintiff.

There are other alleged errors, the only reference to which in appellant's brief is by number as designated in the transcript as exceptions, and which counsel for appellant asserts are well founded. Since not deemed worthy of argument, we feel justified in concluding they are without merit.

The judgment is affirmed.

Conrey, P. J., and James, J., concurred.