[L. A. No. 7052. In Bank.—May 15, 1923.]

## A. N. McBRIDE et al., Appellants, v. H. FREEMAN et al., Respondents.

[1] DEEDS—BUILDING RESTRICTIONS—GENERAL PLAN OF IMPROVEMENT —EQUITY.—A grantee who buys property with the understanding that it is restricted, and in reliance upon the existence of a general plan of improvement for the whole tract of which his lot forms a part, has not a right in equity to enforce the restriction against another grantee who takes with full knowledge and notice of the restriction, the covenants being a part of each and every deed to lots in the tract and the deed showing that a uniform plan must have been in existence, but there being no contract between the original grantor and defendants' predecessor in interest, whereby it was agreed that the restrictions should be for the benefit of all the lots in the tract, not merely for the benefit of the grantor, or defendants not having purchased their lot with knowledge or notice of such agreement.

[2] ID. — CONDITIONS — FORFEITURE — RULE. — In the construction of a conveyance, ordinarily, to avoid forfeiture, conditions will be construed as covenants, when this can reasonably be done.

[3] ID.—INTENTION AS TO RESTRICTIONS—EVIDENCE.—In a suit to enjoin defendants from proceeding with the erection of a building alleged to be in violation of a uniform building restriction claimed to have been created in conveyances by an owner of a tract of land to various grantees, parol evidence of the intention of the parties is not admissible, where the complaint contained no allegation as to the intention of such grantees, as, in the absence of such allegation, no issue was tendered to which such evidence would be relevant.

[4] ID.—BUILDING RESTRICTIONS—CONTRACT FOR.—If the parties desire to create mutual rights in real property as to building restrictions, they must so provide in the written instruments exchanged between them, which constitute the final expression of their understanding.

APPEAL from a judgment of the Superior Court of Los Angeles County. Albert Lee Stephens, Judge. Affirmed.

The facts are stated in the opinion of the court.

Charles E. Millikan and Loyd Wright for Appellants.

C. E. Spencer and W. A. Freeman for Respondents.

MYERS, J.—Plaintiffs appeal from a judgment in favor of defendants in a suit to enjoin defendants from proceeding with the erection of a building in violation of a uniform building restriction. The sole question presented upon the appeal is whether the complaint states facts sufficient to constitute a cause of action. It is alleged in the complaint that one Allen, who was the owner of a large parcel of land, caused a map thereof to be recorded, subdividing the same into a large number of lots, and then proceeded to sell and convey said lots by reference to said map to various persons, including the predecessors in interest of plaintiffs and defendants "and in accordance with a general plan or scheme for the improvement of said tract the said owner inserted in each and every deed conveying said lots, or any of them, restrictions and conditions in words and figures as follows: 'Subject to following building restrictions: no offices, stores, flats, lodging or apartment or any business building of any description to be erected, kept or maintained on said property, but a residence, same when erected to cost not less than three thousand ($3000.00) dollars on lots 48, 49, 50, 51, 52, 53 and south 30 feet of lot 47; to cost not less than thirty-five hundred ($3500.00) dollars on lot 44 and north 15 feet of lot 43; to cost not less than four thousand ($4000.00) dollars on north 90 feet of lot 47; and all to be placed at a uniform distance of forty-two and one-half feet from front property line on Willard Ave.'; that all of the lots in said tract have been sold or are being offered for sale in accordance with said general plan or scheme, and subject to said restrictions and conditions, and that said restrictions were imposed and said general plan or scheme adopted for the general benefit of all lots in said tract, and that the respective lots owned by plaintiffs, and each of them, and the lot now owned by defendants, and the other lots in said tract sold and conveyed as aforesaid, were each and all conveyed by a common grantor, to wit, the said E. L. Allen, and subject to the restrictions and conditions aforesaid and pursuant to and in accordance with the aforesaid general plan or scheme for the improvement of said tract and the several groups of lots shown on said

map''; that by mesne conveyances, each containing the same restrictions, plaintiffs received title to their respective lots and defendants received title to their lot; that the plaintiffs or their predecessors in interest purchased their respective lots in reliance upon said general plan or scheme and upon said restrictions and conditions, and that each of the plaintiffs has erected upon his lot a residence in compliance with said restrictions; and that defendants are now proceeding with the erection of a building on their said lot which is in violation of said restrictions.

[1] The question thus presented is stated by appellants as follows: "Does one grantee who buys his property with the understanding that it is restricted, and in reliance upon the existence of a general plan of improvement for the whole tract of which his lot forms a part, have a right in equity to enforce the restriction against another grantee who takes with full knowledge and notice of the restriction, the covenants being a part of each and every deed to lots in the tract and the deeds showing that a uniform plan must have been in existence?" This precise question was answered adversely to appellants' contentions in the case of *Werner* v. *Graham,* 181 Cal. 174 [183 Pac. 945]. Appellants contend that what was there said upon this subject was *dictum,* for the reason that the restrictions there under consideration were cast in the form of a condition, and that what was there decided should be held inapplicable to restrictions, as in the instant case, which are cast in the form of covenants. This contention cannot be sustained. Viewing the restrictions under consideration in the Werner case as conditions, no substantial question was presented by that appeal. The court disposed of that question in the following words: "If the provisions are in fact conditions and not covenants, the defendants are not entitled to enforce them against the plaintiff, for the reversion clause runs in favor of Marshall [the common grantor], his heirs and assigns and does not include the defendants, since by 'assigns' must be meant in this state assignees of the reversion or right of re-entry." [2] It is well settled that "in the construction of a conveyance, ordinarily, to avoid forfeiture, conditions will be construed as covenants, when this can reasonably be done." (9 Cal. Jur., p. 336, and cases cited.) In recognition of this rule the court then

proceeded to consider and decide that case upon the assumption that the restrictions therein, though in form of conditions, were, in fact, covenants, and what was there decided, in that view of the case, can in no sense be regarded as *dictum.*

Appellants suggest, in effect, that *Werner* v. *Graham* should be overruled, and assert that it is contrary to the great weight of authority from other states. The latter may be conceded, but presents in itself no sufficient reason for a departure at this time from the rules there enunciated. After a careful reconsideration of the questions there involved, we are satisfied with the validity of the conclusions there stated, and with the soundness of the reasoning by which they were reached. The rules there enunciated are rules of property and have stood unchallenged and unquestioned for more than three years. That case has since been cited as authority by this court in *Los Angeles etc. Co.* v. *Marr,* 187 Cal. 126 [200 Pac. 1051], and *Mapel* v. *Canady,* 189 Cal. 373 [208 Pac. 280], and the conclusions there reached were clearly forecasted by previous decisions of this court over a long period of years. In *Los Angeles etc. Co.* v. *Muir,* 136 Cal. 36, 50 [68 Pac. 308, 313], the court said: ''In the absence of any *words in the deed* to this effect, or any *reference to a plan* showing a general scheme of improvement, the grantees took their estate without any notice, express or constructive, that the restriction was intended for the benefit of the adjoining estate.'' (Citing cases.) In *Hunt* v. *Jones,* 149 Cal. 297 [86 Pac. 686], the court recognized the rule that where a proper case is presented equity will enforce a personal covenant or agreement relative to land as effectually as would a court of law had the covenant been one clearly running with the land, and the covenant in that case having been made *expressly* for the benefit of plaintiff's land, was held enforceable in equity as against an assignee of the covenantor who took with notice thereof. *Bryan* v. *Grosse,* 155 Cal. 132 [99 Pac. 499], is to the same effect. In *Long* v. *Cramer Meat & Packing Co.,* 155 Cal. 402 [101 Pac. 297], the court, in an equity case, refused to enforce such a covenant, which rested in parol, saying: ''While it is true that in a proper case equity will enforce against the covenantor's grantee a personal covenant imposing

restrictions upon the use of land contained in the grant thereof [citing cases], yet equity will do so only in a proper case and would certainly withhold its hand where such a restriction *is not imposed by grant or is sought to be created by parol.* The same is true of the *attempt to erect out of this agreement some servitude."* In *Berryman* v. *Hotel Savoy,* 160 Cal. 559 [37 L. R. A. (N. S.) 5, 117 Pac. 677], the court said: "The intention of the parties should be 'determined by *a fair interpretation of the grant* or reserve creating the easement' [citing cases]. 'It seems to us that in all these cases it is better to .get at the intention of the grantor from the *language of the deed,* interpreted in the light of the attending circumstances, than to conjecture the intent from the circumstances and then to make the language of the deed bend to that.' " *Alderson* v. *Cutting,* 163 Cal. 503 [Ann. Cas. 1914A, 1, 126 Pac. 157], involved a case of uniform building restrictions wherein "each of said deeds declared that the conditions stated should, as to each owner of any other lot in the tract, his heirs, successors or assigns, operate as covenants running with the land *for the benefit of such other lots or their owners."* These restrictions were held enforceable by one grantee as against another. In *Bresee* v. *Dunn,* 178 Cal. 96 [172 Pac. 387], the court said: "Undoubtedly covenants imposing building restrictions have been frequently upheld, but the courts are slow to declare such burdens upon real property to exist unless *it clearly appears from the deeds* of conveyance not only that a general scheme of improvement is contemplated, but also if the grantee of the original covenantee seeks to enforce a restriction, that it is not a mere personal covenant, but *passes with the land. . . .* There is nothing in either of the quotations from conveyances set forth in plaintiff's pleading, and nothing in the averments of the complaint, to take the pleaded restrictions out of the category of purely personal covenants made for the original grantor's benefit." (The italics are added in the foregoing quotations.) It is true that language may be found in the opinion in each of those cases which, taken by itself, would seem to point to a different conclusion, but the excerpts above quoted are in harmony with the points there actually decided. It is also true that each of those cases is distinguishable from the Werner case

on the ground of a difference in the facts. But a careful consideration of the points decided and of the reasons stated therefor will reveal the fact that the decision of the Werner case followed them as the natural sequence and logical development of a line of decision extending over a period of more than seventeen years.

In the Werner case the court said: ''There are decisions to the effect that when it appears that the owner of a subdivided tract has sold various lots in it from time to time and in each conveyance has exacted restrictive covenants which it is evident, when all the deeds are considered together, were exacted in accord with a common plan, it is enough, and that mutual equitable servitudes have been created, although in any single deed taken by itself there is nothing to indicate any intent to create reciprocal rights. [Citing cases.] There is likewise authority to the contrary. (*Mulligan* v. *Jordan,* 50 N. J. Eq. 363 [24 Atl. 543]; *Roberts* v. *Scull,* 53 N. J. Eq. 396 [43 Atl. 583]; *Sharp* v. *Ropes,* 110 Mass. 381; *Judd* v. *Robinson,* 41 Colo. 222 [124 Am. St. Rep. 128, 14 Ann. Cas. 1018, 92 Pac. 724].)'' Appellants assert herein that the cases there cited were misconstrued by this court and that they do not at all sustain the rule for which they were cited. This assertion is not warranted. *Mulligan* v. *Jordan,* 50 N. J. Eq. 363 [24 Atl. 543], and *Roberts* v. *Scull,* 58 N. J. Eq. 396 [43 Atl. 583], both expressly hold that the mere fact that the common grantor had exacted the same restrictions in the deeds to all of the lots in the tract is not sufficient evidence that the covenant was entered into for the benefit of all those lots. *Sharp* v. *Ropes,* 110 Mass. 381, holds, in effect, that the exaction of such uniform restrictions, coupled with the further circumstance that the restrictions in terms prohibited the carrying on of any ''trade or manufacture injurious or offensive to dwelling-houses or their occupants in the neighborhood,'' would not be sufficient to justify the conclusion that the restrictions were for the benefit of all the lots. *Judd* v. *Robinson,* 41 Colo. 222 [124 Am. St. Rep. 128, 14 Ann. Cas. 1018, 92 Pac. 724], is so much in point that if it had been a decision of this court it would have compelled the ruling which was made by the trial court in the case at bar.

Appellants apparently lose sight of the fact that their right to relief herein must rest upon the foundation of a contract between the original grantor and defendants' predecessor in interest, whereby it was agreed that the restrictions should be for the benefit of all the lots in the tract, not merely for the benefit of the grantor, and upon the further foundation that defendants purchased their lot with knowledge or notice of such agreement. As Lord Cottenham said in *Tulk* v. *Moxhay*, 2 Phill. Ch. 774: ''The question is not whether the covenants run with the land, but whether a party shall be permitted to use the land in a manner inconsistent with the *contract entered into by his vendor and with notice of which he purchased.*'' (Italics added.) And as was said in *Nottingham Patent Brick etc. Co.* v. *Butler*, 15 Q. B. Div. 261: ''Where the same vendor selling to several persons plots of land, parts of a larger property, exacts from each of them covenants imposing restrictions on the use of the plots sold, without putting himself under any corresponding obligation, it is a question of fact whether the restrictions are merely matters of agreement between the vendor himself and his vendees, imposed for his own benefit and protection, or are *meant by him and understood by the buyers* to be for the common advantage of the several purchasers.'' (Italics added.) It takes two to make a contract. There must be a meeting of the minds of both parties thereto. The mere fact that the vendor in the exaction of uniform building restrictions had in his own mind a general plan or scheme of improvement falls short of establishing even his own intention that such restrictions shall be for the benefit of anyone other than himself, and much less does it establish such a meeting of minds between him and his grantee as is necessary to create a contract. Given such intention in the mind of the grantor, there must have coexisted a like intention in the mind of his grantee before the first element of plaintiff's cause of action can come into existence. A purchaser, realizing that changed conditions in the future might render a release of the restrictions most desirable, might be willing to purchase subject to restrictions for the benefit of a single vendor, while he would be wholly unwilling to purchase subject to the same restrictions in favor of fifty or five hundred other lot owners, any one of whom could prevent

the release thereof in the future. He might be willing to take the chance of being able to negotiate with his vendor for a release of the restrictions at a later date, but would realize that such a prospect would be hopeless if there should be a large number of separate lot owners each entitled to insist upon the maintenance of the restrictions. It is not necessary to invoke the rule of the Werner case herein in order to sustain the judgment appealed from, because the complaint is wholly lacking in any averment that the restrictions were intended by both parties thereto to be for the benefit of all the lots in the tract, and is wholly lacking in any allegation that the defendants purchased their lot with knowledge or notice of any such intention or agreement.

The case of *De Gray* v. *Monmouth Beach Club House Co.,* 50 N. J. Eq. 329 [24 Atl. 388], chiefly relied upon by appellants, makes it clear that "the right of the owner of a lot to enforce a covenant restrictive of the use of another tract entered into between former owners depends primarily on the covenant having been made for the benefit of the land embracing said lot." That case is at variance with the Werner case in that it holds impliedly that parol evidence may be resorted to for the purpose of ascertaining the intention above referred to. But the principal ground of decision in that case appears to have been that such intention clearly appeared from the language of the deed itself there under consideration, when read in the light of the circumstances surrounding its execution. The restrictions embodied in all the deeds therein forbade the use of the property conveyed for any "uses or purposes that shall depreciate the value of the neighboring property for dwelling-houses." The court said: "The phraseology of the covenant indicates it is for the benefit of neighboring property. There can be no doubt that each purchaser from the trustees was aware of the plan and bought with the understanding that all the deeds were to contain the covenant and bought with that consideration in view." It also appeared that the title to the entire tract was vested in trustees, who held the same for the purpose of selling and making conveyances of *all* the lots in the tract, and in this connection the court said: "The trustees had no other interest in the title than as holding it for sale. The case does not admit of the idea that the covenant was for the advantage

or benefit of the grantors or that it was other than for the benefit of all the lands and each purchaser. These considerations make the right of the complainant to maintain this action clear.''

[3] Appellants' contention that they should have been permitted to introduce parol evidence to establish the intention of the parties may be sufficiently answered by pointing out that they were not entitled to introduce *any* evidence thereof because their complaint contained no allegation as to the intention of the grantees in said deeds, and, therefore, tendered no issue to which such evidence would be relevant. [4] But aside from this consideration, we are satisfied that it is our duty to adhere to the conclusion expressed in the Werner case ''that if the parties desire to create mutual rights in real property of the character of those claimed here, they must say so and must say it in the only place where it can be given legal effect, namely, in the written instruments exchanged between them, which constitute the final expression of their understanding.'' Any other rule would make important questions of the title to real estate largely dependent upon the uncertain recollection and testimony of interested witnesses. The rule of the Werner case is supported by every consideration of sound public policy which has led to the enactment and enforcement of statutes of frauds in every English-speaking commonwealth.

The judgment is affirmed.

Lawlor, J., Lennon, J., Waste, J., Kerrigan, J., Seawell, J., and Wilbur, C. J., concurred.