[Civ. No. 2521.   Fourth Appellate District.—April 19, 1940.]

FRED G. COLLANI et al., Respondents, v. RONALD ARTHUR WHITE et al., Appellants.

540

William A. Page for Appellants.

Arthur C. Webb and Robert A. Neeb, Jr., for Respondents.

MARKS, J.—This is an appeal from a judgment enjoining defendants from proceeding with the erection of, and requiring them to remove a partly completed building on the east one-half of lot 15 in tract number 7737 which is a part of the Hollywood estates in Los Angeles. No effort was made to forfeit the title to the property.

This action was instituted by Fred G. Collani, Zadah G. de Lihus, R. W. Reed and O. W. March who owned property in tract number 7737. The action was dismissed as to March and a nonsuit granted as to Reed. Judgment was rendered in favor of plaintiffs Collani and de Lihus and against Ronald Arthur White, the owner of the east half of lot 15, and Arthur E. White, his father, who had no interest in the property. We will hereafter refer to Ronald Arthur White as the defendant.

Defendant's property fronted and abutted on Queen's Road and the de Lihus property on Queen's Way, another street in the subdivision. The Collani property fronted on Queen's Road and was within five hundred feet of defendant's property.

Defendant acquired his property in January, 1936. A few months later he secured a building permit to erect a

private dwelling upon it at a cost of three thousand dollars. He was an architect and his father had been a building contractor. The two, with some assistance from others, started the erection of a structure on the property. The work proceeded slowly, and when this action was started on August 12, 1936, the building was far from completed. The lot upon which the house was being built slopes to the east. Apparently one room had been completed on its lower level. Another and larger portion of the house was being erected which was attached to the rear of the room on the lower level. The floor of this larger addition was about on a level with the roof of the former. Both parts of the building were one story. Practically no work was done on the building after the suit was filed, although defendant secured another building permit for $7,000, before the trial.

Defendant testified that the portion of the building we have described was a first unit in the residence which he proposed to erect at a cost and value in excess of $10,000. He produced drawings of two elevations of the proposed structure which showed a two-story dwelling with tile roof and stucco finish.

Plaintiffs offered evidence to the effect that the completed dwelling shown by the drawings would cost about $6,300. While there is no finding on this question, there is a finding, supported by evidence, that the building which was being erected "does not cost in excess of seventeen hundred ($1,700.00) dollars".

The Hellman Commercial Trust & Savings Bank was the common grantor of the owners of property in tract number 7737. The deeds contained building restrictions. We briefly summarize those of interest here as follows: The property was to be used exclusively for single, private, one-family, two-story residences, each of which was to cost and be worth not less than $10,000. The construction of a dwelling once commenced was to be prosecuted with reasonable diligence until its completion. The "conditions" in each deed were to apply to and bind only the property therein described and the owner thereof with the right reserved "to create, make and/or apply similar or varying or different conditions, or to omit the same entirely, in sales and conveyances of other lots in said Tract and/or other property owned by grantor. Provided, also, that by the mutual written agree-

ment of the owner of said property and the grantor herein, or its successors in interest, as the owner of the reversionary rights herein provided for as to said property, any or all of the conditions contained in paragraphs numbered 2, 3 and 4 may be terminated, changed, modified or amended, which agreement to be effective, shall be duly and legally executed and recorded in the office of the County Recorder of said County.''

The deeds also contained the following:

''Provided, Further, That a Breach of Any of the foregoing conditions shall cause said property to revert to the grantor herein, its successors or assigns, each of whom, respectively, shall have the right of immediate reentry upon said property in the event of such breach, and as to the owner or owners of any other lot or lots in said Tract and which front or abut on the same street, and are not more than 500 feet distant from said property, the foregoing conditions shall operate as covenants running with the land, and the breach of any such covenants, or the continuance of any such breach may be enjoined, abated or remedied by appropriate proceedings by the grantor herein, its successors, or assigns, or by any such owners, their heirs, devisees, executors, administrators, successors, or assigns, but by no other person.''

The rules of law governing the legal effect of building restrictions under varying circumstances are set forth in a number of cases of which we cite the following: *Los Angeles etc. Co.* v. *Muir,* 136 Cal. 36 [68 Pac. 308] ; *Firth* v. *Marovich,* 160 Cal. 257 [116 Pac. 729, Ann. Cas. 1912D, 1190] ; *Alderson* v. *Cutting,* 163 Cal. 503 [126 Pac. 157, Ann. Cas. 1914A, 1] ; *Bresee* v. *Dunn,* 178 Cal. 96 [172 Pac. 387] ; *Werner* v. *Graham,* 181 Cal. 174 [183 Pac. 945] ; *McBride* v. *Freeman,* 191 Cal. 152 [215 Pac. 678] ; *Martin* v. *Holm,* 197 Cal. 733 [242 Pac. 718] ; *Sharp* v. *Quinn,* 214 Cal. 194 [4 Pac. (2d) 942, 78 A. L. R. 501] ; *Gamble* v. *Fierman,* 82 Cal. App. 180 [255 Pac. 269].

A restriction in a deed, copied in the opinion in *Joyce* v. *Krupp,* 83 Cal. App. 391, at page 394 [257 Pac. 124] , is so similar to the one contained in the last-quoted paragraph from the deeds before us here as to suggest it was used as a model by the scrivener who drew the deeds conveying the property in tract number 7737.

The restrictions quoted from the Joyce opinion contained the following: that "as to the owner of any other lot in said tract fronting upon the same street and in the same block with the said premises, the foregoing restrictions and conditions shall operate as covenants running with the land, and the breach of any such covenant or the continuance of any such breach may be enjoined, abated, or remedied by appropriate proceedings by such Grantor, its successors or assigns, or by any such owners, their heirs, devisees, executors, administrators, successors or assigns, but by no other person". It was held that the building restrictions might be enforced by an owner having property in the same block and fronting on the same street as that of an offending owner.

The Joyce case, when read in connection with *Wayt* v. *Patee*, 205 Cal. 46 [269 Pac. 660], seems decisive of the question presented here. In the Wayt case it appears that restrictions against occupation by any persons other than those of the Caucasian race had been placed in the deeds to all lots in a tract and had expired by lapse of time. The owners of sixty of the lots in the tract extended the restrictions as to their lots for a period of twenty-five years and the agreement was duly recorded. One owner, who was a signer of the contract, proposed to sell and deliver possession of his property to persons of African descent. Another owner, who was also a signer, brought suit to enjoin the transfer of possession. The injunction was denied by the trial court. The judgment was reversed on appeal on the theory that even though the contract might not have been signed by all of the owners of the lots in the tract, its covenants could be enforced by an owner, who had signed the contract, against another who had signed it and persons taking from him with notice. The Supreme Court said:

"It is contended, however, by the respondents that the covenant in question is merely a personal covenant; that it does not run with the land, notwithstanding the language thereof indicating a contrary intention, and, therefore, a court of equity will not enjoin the violation thereof. There are authorities to the effect that a court of equity will grant injunctive relief against the violation of covenants restricting the free use of land, not only as against the parties to such covenants but as against an assignee taking with notice of such covenant, even if the covenant is merely personal and

does not run with the land. In 7 California Jurisprudence, page 743, the subject is treated as follows: 'Although covenants restricting the free use of one lot or parcel of land for the benefit of another may not meet the requirements of covenants running with the land, they may, nevertheless, constitute personal covenants enforceable not only against the original covenantor but against subsequent holders with notice. The principle upon which such covenants are enforced in the last-named instance is found in the general rule of equity that a party taking with notice of an equity takes subject to that equity. Liability on the covenants results not from his being the assignee of the party who made the agreement but because he has taken the estate with notice of a valid agreement concerning it, which he cannot equitably refuse to perform.' . . . These authorities were before this court in the case of *Hunt* v. *Jones,* 149 Cal. 297, 301 [86 Pac. 686], and were expressly approved in the opinion in said case. In that case, among other things, the court said (page 300 [86 Pac. 688]) : 'We do not discuss the point as to whether the covenant here in question was one running with the land so as to bind the assignee of the water company as grantee of plaintiff's covenantor, the Thermalito Colony Company, association, because we think that, treated simply as a personal covenant or agreement under the allegations of the complaint, a court of equity would be warranted in enforcing it against the defendant. There can be no doubt of the proposition that personal covenants or agreements bestowing benefits and imposing restrictions upon the use of land may be enforced in equity where a subsequent purchaser from the covenantor takes with notice of an existing equitable claim or interest in favor of another.' *Hunt* v. *Jones, supra,* has been expressly approved by this court in the two recent cases of *McBride* v. *Freeman,* 191 Cal. 152, 155 [215 Pac. 678], and *Martin* v. *Holm,* 197 Cal. 733, 747 [242 Pac. 718.] ''

The cases of *Title Ins. & Trust Co.* v. *Fette,* 90 Cal. App. 606 [266 Pac. 570], and *Childs* v. *Newfield,* 136 Cal. App. 217 [28 Pac. (2d) 924], also follow the same rules.

These cases require us to affirm portions of the judgment even though the subdivider and common grantor did not impose similar building restrictions on all of the lots in the subdivision for the benefit of the entire tract. The owners

of lots fronting or abutting on the same street and within five hundred feet of the property of an owner who violated the restrictions could enforce them against such offending owner.

It is clear that Zadah G. de Lihus did not own property fronting or abutting on the same street as did the property of defendant. She could not enforce the restrictions against defendant.

Arthur E. White had no interest in defendant's property. He was merely living on it and assisting his son in the work of building the house. No judgment should have been rendered against him.

The portion of the judgment in favor of Zadah G. de Lihus is reversed. The portion of the judgment against Arthur E. White is reversed. The portion of the judgment in favor of Fred G. Collani and against Ronald Arthur White is affirmed.

Barnard, P. J., and Griffin, J., concurred.