H. N. FREY, Wendell H. Sandlin, d/b/a Sandlin Oil Company, Dennis L. Porter, and each of them, Plaintiffs in Error,

v.

Paula P. POYNOR, Vernie Walker, and Thelma Drake, Defendants in Error.

No. 39370.

Supreme Court of Oklahoma.

Jan. 9, 1962.

Rehearing Denied Feb. 27, 1962.

W. J. Otjen, Jr., of Otjen & Carter, Enid, for plaintiffs in error.

David L. Field, Raymond D. North, Field & North, Enid, for defendants in error.

BLACKBIRD, Vice Chief Justice.

The judgment challenged in this appeal enforces, as a "restrictive covenant", a provision of a deed to lots 6 and 7, Block 13, of the Garland Addition to the City of Enid, by permanently enjoining the plaintiffs in error, and all persons claiming by, through or under them, from constructing or maintaining a filling station thereon.

The lots involved are the only ones in the Addition that have never had a permanent structure on them. They were platted in, and as a part of, said Addition on or about May 11, 1907, by Messrs. C. E. Gannon and S. R. Marshall, and a woman referred to as A. F. Goulding.

On the addition's plat, as filed in the office of the County Clerk, there is no mention of any building restriction, but in the deeds by which the platters conveyed to

their grantees, all of the Addition's lots, except 26, there was the following provision:

"It is stipulated as a part consideration of this deed that no dwelling shall be constructed to cost less than $1,000.-00 on eather of described lots.

"It is stipulated as a part consideration of this deed that no interest to the premises shall be transferred, conditionally or unconditionally, to any person or persons having in him or them negro blood or being a descendant from negro ancestors *and said premises are to be used as site or sites for dwelling house or appurtenances only. Otherwise title in free reverts from grantee to grantor.*"

On some of the Addition's 280 lots, whose original conveyances contained such provisions, now stand homes or mansions, which were among Enid's finest, or most expensive, homes when they were erected between 20 and 30 years ago. All of the homes in this addition are occupied by their owners.

There are however three areas of the Garland Addition, which, for many years, have been used for commercial purposes. They are as follows: Block 6, containing 12 lots on which Oklahoma Floral Company constructed, and maintains, greenhouses and a flower store; Lots 1 and 2, Block 19, which are used as an entrance to Oklahoma Gas & Electric Company's sub-station, west of the addition; and the South half of Lots 1 and 2, Block 12, on which stands a one-story brick building, facing Buchanan Street, occupied by a barber shop, and the sales offices of a metal company, and an electrical appliance company. This building was constructed many years before the death, in 1934, of one of the platters, C. E. Gannon, whose own home was on Block 1, on the southwest corner of Buchanan and Oklahoma Avenues. The other two platters are also dead.

In 1954, when the two lots directly involved in this action were owned by the mother of the plaintiff in error, Dennis L. Porter, hereinafter referred to as a defendant, their zoning classification was changed by an Enid City ordinance from "residential" to "commercial". An effort was thereafter made before Enid's City Planning Commission to cause the zoning to be changed back to "residential", but this effort failed. When this action was filed in May, 1960, Porter held title to the lots in a fictitious name, but later placed same in his true name, after having leased them to the defendant, Sandlin, who obtained, from the Enid City Engineer, a building permit to erect a filling station thereon; and Lahoma Street, which is traversed by Highways 60 and 15, was being broadened to accommodate four lanes of traffic. Defendants in error, who instituted the action and will hereinafter be referred to as plaintiffs, are the owners of homes on Lots 1, 4 and 5 of the Addition's Block 13.

In their petition for the injunction, plaintiffs alleged, among other things, that the deeds by which they obtained title to their respective home properties, as well as the deeds of conveyance to the owners of other real estate in Block 13, contained the hereinbefore quoted "restrictive covenant"; that said owners had relied upon, and abided by, said covenant in expending considerable sums of money improving their respective properties; that the covenant "was imposed pursuant to the general scheme of plan of the original owners of the area * * * for the development of a high-class residential section * * *"; that the defendant Sandlin's intended erection of a filling station on Lots 6 and 7 will violate the subject property restriction, be illegal, constitute a nuisance, and cause depreciation in the value of plaintiffs' residences, and those of all others similarly situated.

The demurrer that defendants filed to plaintiffs' petition, on the ground that plaintiffs had no legal capacity to sue and that the petition did not state facts sufficient to constitute a cause of action, was overruled.

Defendants thereafter filed an answer alleging the following:

"(a) That on or about the 18th day of February 1932, in action No. 12,730 brought in the District Court of Garfield County, Oklahoma, the alleged and/or purported claim of the plaintiffs was duly adjudicated and these defendants predecessor in title was given judgment duly quieting his title and the title of the defendants against the plaintiffs predecessor in title for the same and exact cause now claimed by the plaintiffs.

"(b) That the purported restriction is a condition subsequent which was personal to the grantor of these defendants, and said condition having been effectively quieted as above set out in par (a), and said defendant having purchased the property in reliance thereon, are innocent purchasers for value.

"(c) That other lots in the addition herein involved have for many years been used for business purposes and buildings and that the alleged scheme of development was long ago abandoned and that the plaintiffs purchased their property knowing full well that the alleged scheme did not exist, that the alleged covenants had been broken and that they could not rely thereon.

"(d) That the lots owned by the defendant are no longer suitable for residential purposes by reason of the changing condition of the addition and neighborhood."

At the trial, the owners of 9 of the 280 lots in the Garland Addition testified as witnesses for the plaintiffs. While all of them testified that they purchased their property with the understanding that said Addition was restricted to residential uses, eight of them admitted knowing of the existence of the flower company's commercial establishments adjoining the railroad right of way, or the hereinbefore mentioned brick building on Buchanan Street, or both.

Among other things, it was shown during the testimony of these witnesses, that there is a shopping center on the south side of Market Street (where Johnson Street intersects it), containing, among other businesses, a filling station. This filling station is closer to the homes of plaintiffs' witnesses, W. E. Crowe and Walter Coen—and the aforementioned brick building, housing three commercial establishments on Buchanan Street, is closer to the home of plaintiffs' witness, Harold Gasaway—then the proposed filling station would be.

It was revealed during the cross examination of plaintiffs' witness, V. E. Walker, whose home is on Lot 4, Block 13, of the subject Addition, that he, at one time, operated a used car business on the two lots involved here.

Defendants had two witnesses who were in the real estate business. An attempt was made to show by their testimony that the subject lots are no longer suitable for sites of residences.

Incorporated in, and made a part of, the journal entry of the trial court's judgment granting the injunction, was a "Memorandum Opinion" said court filed in the cause, in which it found, among other facts, in substance that:

There has been no change in the status of the Garland Addition, as a residential section of Enid for many years; " * * * that the defendant Porter was aware of and had notice of the restrictive clauses of record as to the two lots in question and as to the other lots in the addition * * *".

Said opinion continued as follows:

"That in placing the restrictive clauses in the deeds as issued by the platters, there was a clear and explicit general scheme that the lots, with a few exceptions as hereinbefore mentioned, were to be used for residential purposes only. And in this connection, the use of the word dwelling was and is synonymous with the word residence. That such use of the land involved in this Addition

was intended for the mutual benefit of the party or parties obtaining the various lots in Garland Addition and their grantees, including these plaintiffs. Further, that such restrictive clause or clauses constituted restrictive covenants which were within reasonable bounds, and are not ambiguous and are still operating.

"That the original purpose of the platters of restricting the property to residential purposes only can be effected by the granting of equitable relief to this action; and that substantial benefit may yet inure to the residents of Garland Addition, including these plaintiffs, by the enforcement of such restrictive covenants.

"Accordingly, under the evidence adduced herein and findings thereon, this Court reaches the following CONCLUSIONS:

"(a) The evidence submitted herein is not sufficient to show that the original purpose and intent of the restriction as to dwelling only has been altered, destroyed, or abandoned by changed conditions. In this connection defendants failed to establish their claim of changed conditions in the surrounding property and neighborhood.

"(b) There is not sufficient evidence in this case that the original purpose cannot be accomplished as to the owners of the other restricted lots and that substantial benefits may not yet inure to the residents of Garland Addition, including these plaintiffs, by the enforcement of said restriction as to dwelling sites only.

"(c) Evidence submitted herein is sufficient to adequately show that the two lots in question were and are suitable and valuable for residential purposes; and that the restriction or the use of the property is still of benefit to the property owners in the Addition.

"(d) The real estate foreclosure action in 1932 is not compelling or controlling and does not constitute res adjudicata.

"(e) The re-zoning or re-classification in 1954 as to these two lots by the City authorities for purposes other than residential did not supersede the original deed restriction so as to now prevent enforcement of such restriction as to dwelling.

"(f) The plaintiffs, as lot owners in this Addition, are entitled to enforce this covenant by an injunction; and the proposed construction and use of a filling station on these two lots in question would be a violation of the restrictive covenant contained in the deed."

After the overruling of their motion for a new trial, defendants lodged the present appeal.

 In their first argument for reversal, defendants contend that their demurrer to plaintiffs' petition should have been sustained, because it is plain from the wording of the deed provision quoted therein, that same is not a "restrictive covenant", but is a "condition subsequent", which "* * * can be taken advantage of only by the grantor"—not by owners of adjacent property, or grantees in other deeds. Defendants point out that plaintiffs are not the grantors of the two lots involved, and have no title or interest in them by reason of the asserted "condition subsequent", which they say was "personal" to defendants' remote grantors (as distinguished from a covenant running with the title to the lots).

In its aforesaid "Memorandum Opinion", the trial court found, and we think correctly so, "that in the present suit for injunction there is no question involved as to the reverter or forfeiture * * *". In Blackard v. Good, 207 Okl. 175, 248 P.2d 596, 598, this court said:

"There is no question that a personal covenant or agreement affecting lands will be held valid and binding in equity on a purchaser taking the estate with notice, and *it is immaterial that the agreement may not be a covenant which*

*runs with the land.* Southwest Petroleum Co. v. Logan, 180 Okl. 477, 71 P.2d 759. Herein the right of action and the right to the relief claimed rests with the terms of the written agreement of which the defendants had actual notice, and together with all of the surrounding circumstances leading up to the execution of the written contracts.

"The primary question in test of the plaintiff's petition by demurrer is whether the contract in pleading, and of which the defendants had actual notice, contains a restriction against the use of the land by these particular defendants * * *. In the case of Richardson v. Callahan, 213 Cal. 683, 3 P.2d 927, 929 the following language was used:

" 'The marked tendency of our decisions seems to be to *disregard the question of whether the covenant does or does not run with the land* and to place the conclusion upon the broad ground that the assignee took with knowledge of the covenant and it was of such a nature that, when the intention of the parties, coupled with the result of a failure to enforce it, was considered, equity could not in conscience withhold relief. * * * *"The precise form or nature of the covenant agreement is quite immaterial.* It is not essential that it should run with the land. *A personal covenant or agreement will be held valid and binding in equity on a purchaser taking the estate with notice. It is* not *binding on him* merely because he stands as an assignee of the party who made the agreement, but *because he has taken the estate with notice of a valid agreement concerning it, which he cannot equitably refuse to perform."* '

"In the case of Southwest Petroleum Company v. Logan, supra (180 Okl. 477, 71 P.2d 762), it was said:

" 'The restrictions need not rise to the dignity of a grant or reservation, but create an equitable right in the nature of an easement, enforceable in equity against all persons taking with notice, even if it rests on no broader principle than that equity will enforce a proper contract concerning land, against all persons taking with notice of it.' " (Emphasis ours).

See also the discussions in Collani v. White, 38 Cal.App.2d 539, 101 P.2d 767, 769; Bryan v. Grosse, 155 Cal. 132, 99 P. 499, and other cases cited in the footnotes in 26 C.J. S. Deeds § 167(1). As said in Osius v. Barton, 109 Fla. 556, 147 So. 862, 867, 88 A.L.R. 394, 464:

"The natural desire of householders to secure desirable home surroundings because of the growth of cities and the more crowded conditions of modern life, has led to a demand for land limited to development purposes. This natural desire has been so exploited by realtors and land companies, that restricted residential property is now becoming the rule rather than the exception in our cities. The legal machinery to achieve this end has been found in the main not in the ancient rules of easements or covenants, but in the activities of courts of equity in preventing fraud and unfair dealing by those who take land with notice of a restriction upon its use, so that in equity and good conscience they should not be permitted to act in violation of the terms of such restrictions."

Defendants inferentially recognize that other persons than the parties to the deed in question may enforce its restrictive provisions, by citing the rule that their rights depend upon whether such provisions were intended for the benefit of the property owned by them. They point out, however, that plaintiffs' petition did not contain the word "benefit", or any analogous wording; and they maintain that there was no evidence introduced at the trial, from which it might be inferred that the restrictive provision in question was for the benefit of plaintiffs, or their properties. Defendants' brief contains a quotation from Sec. 3608

of Thompson on Real Property (Perm.Ed.) for which that author cites more than one early case apparently supporting their argument; but, we think the more recent, and better reasoned cases, support the conclusion that the nature of the restrictions in the present case, and the pertinent circumstances concerning the Garland Addition, are sufficient to show that the restriction was for the benefit of the property in said Addition, as a whole. See, for instance, Bauby v. Krasow, 107 Conn. 109, 139 A. 508, 57 A.L.R. 331, 334, 335.

Under Defendants' "Specification (of error) Two", they contend that plaintiffs failed in their burden of proving that the restrictive provision in question was to carry out a general scheme, or plan, that has never been abandoned and was for the benefit of plaintiffs' properties, was not for the benefit of, and personal to, the grantor, and was part of the consideration for plaintiffs' purchases of their properties.

 In support of their argument as to the lack of a general scheme, or plan, of restriction in the Garland Addition, defendants call attention to the fact, hereinbefore alluded to, that 26 lots, scattered through said addition, have never had the restrictive provision in any of their deeds. Ordinarily, the right to enforce restrictions, imposed pursuant to a general scheme, must be universal and reciprocal, that is, the same restrictions must apply substantially to all lots of like character, or similarly situated; and their deeds must be in harmony with the scheme. But many courts have held, in effect, and we think correctly so, that the proper definition of the term "general scheme", as used in the rule, *does not require all* lots of the area involved to be restricted. See Rowe v. May, 44 N.M. 264, 101 P.2d 391, and other cases cited at 26 C.J.S. Deeds p. 1149, § 167(2), Note 39. We know, as a matter of common knowledge, that platters of many additions have regarded, as an asset to same, lots therein that might be used for commercial purposes and convenient places to shop. We are unable to agree that the fact that 26 of the lots in

the 280-lot Garland Addition are free of restriction, renders the pertinent findings and conclusions of the trial court clearly against the weight of the evidence, or contrary to the correct view of the law. After thoroughly examining the evidence, we think it adequate to overcome any legal presumption that it was the intention of the platters and planners of the Garland Addition that its land was to be free of restrictions as to its use. We also think the evidence sufficient to show that the restrictive provisions they wrote into the original conveyances of 254 of the lots was for the benefit of those lots, and their owners (present and subsequent, including the plaintiffs) rather than being personal to the parties named in those original conveyances. In Vaughn v. Lyon, 122 Okl. 179, 252 P. 1088, 1089, this court expressly recognized it to be well-settled that where the general plan, or scheme, under which a particular tract has been developed is designed to make it more attractive for residential purposes by restricting units of it, either in the plat, *or* in the deeds by which title is conveyed, the restriction may be enforced against one lot owner by owners of other lots in the tract. It was also therein recognized that the plan may be "general" without *all* of the lots being conveyed by restrictive deeds. And it was therein said that where the plan put in force made it attractive for purchasers who contemplated erecting expensive and high-grade homes (as the evidence indicates was done in the Garland Addition) this court " * * * may safely presume * * *" that the restrictions were taken into consideration in the purchase of the lots upon which such homes were erected.

In their argument concerning the requirement that the restriction be part of the consideration of the deeds of those attempting to enforce it, defense counsel advance certain criticisms of the testimony of some of the Garland Addition's home owners, who testified as witnesses for plaintiff. They infer that their demonstrated lack of knowledge concerning the restrictions, and their certain knowledge, at the time they pur-

chased their homes or homesites, of the existence of the hereinbefore mentioned commercial buildings in the addition, renders questionable any claim that such restriction was part of the consideration they bargained for in acquiring their properties. After examining the evidence, we think any conclusion that the subject restriction was not a part of such consideration, would be clearly against the weight of the evidence. The full context of the testimony concerning V. E. Walker's temporary violation of said restriction, as to the two subject lots, by using them for a used car business, tends to belie any inference, or conclusion, that other property owners in the Garland Addition have considered the restriction of no value, or have "had actual and constructive notice" that it was not in effect.

In their argument to the effect that, if there was originally a plan, or scheme, of restriction in the Garland Addition, it has been abandoned, and the Addition's character, as a residential area, has changed, defendants say that this was indicated in plaintiffs' petition by allegations of fact concerning the hereinbefore mentioned re-zoning of the subject lots. Defendants cite Weaver v. Bishop, 174 Okl. 492, 52 P. 2d 853, for the assertion that: "A court of equity cannot place any obstacle in front of * * * (a) municipal body which prevents the exercise of its legislative discretion." Granting the truth of this assertion does not establish defendants' position. We think the correct view of the issue here is stated in 26 C.J.S. Deeds § 171(2), as follows:

"* * * the action of the zoning authorities of a city declaring land in a restricted area to be a business district does not have the effect of destroying the restrictive covenants, or prevent enforcement thereof, although it may show, or be persuasive evidence of, the substantial transformation of the district into a commercial district."

In the present case, neither the enactment of the Enid City ordinance re-zoning the two lots here involved, nor the fact that, many years before his death, C. E. Gannon, one of the platters-grantors, knowingly permitted the construction of the hereinbefore mentioned three-store building, directly across the street from his home, establishes, in view of the other undisputed facts concerning the addition, that, in the main, the original plan, or scheme, of restriction for the Garland Addition was ever abandoned.

Nor do we interpret the testimony of the two aforementioned real estate men, as saying that said addition is now totally unsuitable for residential purposes. They both opined that the particular two lots involved are more valuable for commercial, than residential, uses, but it is evident from their testimony that the widening of Lahoma or Market Street into a four-lane highway, was a major factor in their opinions. (It is not shown when the two highways were first routed over this street, and it is not argued that this constituted a "changed condition.") These lots' greater value for commercial uses, however, constitutes, in itself, no valid justification for denying plaintiffs the enforcement of the restriction as to their use. See Commercial Realty Co. v. Pope, 171 Okl. 331, 43 P.2d 62; Van Meter v. Manion, 170 Okl. 81, 38 P.2d 557; and other cases cited in 26 C.J.S. Deeds § 171, Note 57.

As hereinbefore indicated, we have not concurred in defendants' contention that the evidence here was insufficient to establish a general scheme of restriction in the Garland Addition; and, after thoroughly examining the evidence pertinent thereto, we likewise reject their claim that it clearly shows said scheme has been abandoned. The trial court's findings and conclusions to the contrary cannot be said to be clearly against the weight of the evidence. On the other hand, they are amply supported thereby.

What we have already said indicates that we regard, as untenable, defendants' argument, under their "Specification Three", to the effect that the judgment in Cause No.

12730, supra, was res judicata of the efficacy of the subject restriction, and plaintiffs' right to enforce it in the present action. As hereinbefore mentioned, that case was a real estate mortgage foreclosure action. That part of the judgment entered therein, quieting the subject lots' title against a conceivable claim by C. E. Gannon that title thereto had reverted to him, because of noncompliance with the restrictive provision of the original deed, was no adjudication of the rights plaintiffs sought to enforce in the present action. Nor does this action constitute a collateral attack on that judgment.

As we have determined that defendants' arguments demonstrate no valid ground for reversing the judgment appealed from, it is hereby affirmed.