2001 OK CIV APP 111

Robert LIVESAY and Yana Livesay, husband and wife, and Harold Zook and Virginia Zook, husband and wife, Plaintiffs/Appellants,

v.

SHORELINE, L.L.C., a/k/a Patricia Island Estates, and Gerald and Cleora Tousey, husband and wife, and David Anglewicz and Bonnie Anglewicz, husband and wife, Defendants/Appellees.

No. 95,933.

Court of Civil Appeals of Oklahoma, Division No. 3.

June 22, 2001.

Rehearing Denied July 20, 2001.

Glennella P. Doss, Tulsa, OK, and Richard D. James, Wallace & Owens, Jay, OK, and Conrad J. Carson, Carson & Associates, Tulsa, OK, for Plaintiffs/Appellants.

David E. Jones, Logan & Lowry, Tulsa, OK, for Defendants/Appellees, Tousey and Anglewicz.

Tommy R. Dyer, Jr., Davis & Thompson, Jay, OK, for Defendant/Appellee, Shoreline, LLC.

HANSEN, Chief Judge:

¶ 1 Appellants, Robert and Yana Livesay (Livesays) and Harold and Virginia Zook (Zooks), have appealed from [1] summary judgment in favor of Appellees, Gerald and Cleora Tousey (Touseys) and David and Bonnie Anglewicz (Anglewicz), and [2] denial of their motion for summary judgment as against all Appellees. The appeal is submitted without appellate briefing in accordance with the accelerated procedure under Rule 1.36, Oklahoma Supreme Court Rules, 12 O.S. Supp.1997, Ch.15, App.

¶ 2 The controversy in this case centers around dredging of Cove 9, also known as Treasured Spring Cove, in that part of Grand Lake located in Delaware County, Oklahoma. The parties all own property in the area surrounding that cove. Appellee, Shoreline L.L.C. (Shoreline or Patricia Island Estates), acquired its property in the mid 1990's with the intention of constructing a golf course, residences and a waterfront development. In furtherance of its development, Shoreline wanted to dredge material from Cove 9, including an abandoned roadbed which runs across the cove.

¶ 3 This roadbed, and more particularly that part which is made up of a large amount of stone, precludes access from the lower part of the cove to the main body of Grand Lake at times of low water. The area of the lake where the roadbed is located belongs to the Grand River Dam Authority (G.R.D.A.). Shoreline applied for dredging permits from G.R.D.A. and the Federal Energy Regulatory Commission (F.E.R.C.).

¶ 4 Livesays own four and one half acres adjacent to the proposed Shoreline development.[1] They had objections to the development and filed complaints with G.R.D.A. and F.E.R.C. concerning the proposed dredging. Livesays withdrew their complaints, and Shoreline received its permit, after Livesays and Shoreline entered into an August 11,

---

1. We were unable to discern from the record if Livesay's property actually bordered on Cove 9, or if it only bordered on Shoreline's property.

1996 "Letter of Agreement" (the letter agreement) limiting the scope of dredging and clearing in and around Cove 9.

¶ 5 The letter agreement, among other things, expressly provided "neither Patricia Island Estates or any of its employees, contractors or agents will attempt to remove any portion of the abandoned county road (also called the 'Stone Bridge')."[2] The letter also stated, "Patricia Island Estates agrees to divulge the permanent presence of the stone bridge and its effect on boat access in Cove 9 to all potential buyers of land adjoining Cove 9."

¶ 6 On September 22, 2000, Touseys and Anglewicz entered into agreements to purchase two residential lots each within Shoreline's development and adjacent to Cove 9. On that same day, both also executed G.R.D.A. applications for permits to dredge the area of the abandoned county roadbed, including the "stone bridge" at the center of this controversy. Warranty deeds documenting the purchases were signed by Shoreline on September 29, 2000, but were not filed until November 1st.

¶ 7 On October 5, 2000, Shoreline entered into an agreement with Touseys and Anglewicz to transfer to them the rights in its dredging permit for Cove 9. The transfer agreement notes a separate agreement between the parties for Touseys and Anglewicz to buy the remaining eleven residential lots surrounding Cove 9.

¶ 8 On October 23, 2000, Gerald Tousey, also representing David Anglewicz, sent a letter to G.R.D.A. asking to amend his application to allow dredging only 500 cubic yards, rather than the 1,800 cubic yards they had originally requested. Tousey's letter states they had already dredged 1,300 cubic yards utilizing the permit issued to Shoreline, but needed the additional 500 yards "to allow the removal of the debris (including the ['stone bridge']limestone fill) located in the mouth of 'Treasured Island Cove'." Tousey also notes the existence of the letter agreement, but states he had never been a party to the agreement. Livesays and Zooks (hereafter collectively Appellants) objected to Tousey's

application with G.R.D.A. and initiated this action.

¶ 9 In their Petition, Appellants sought declaratory relief, asking the court to find Touseys and Anglewicz were precluded from dredging the "stone bridge" by the letter agreement, and asked for damages for breach of the letter agreement. Zooks alleged they were third party beneficiaries of the letter agreement by virtue of owning land affected by it and relying on it in not pursuing objections to dredging. Appellants alleged Touseys and Anglewicz were bound by the letter agreement because, as buyers of the lots from Shoreline, they were successors in interest to property affected by the agreement.

¶ 10 Touseys and Anglewicz filed a joint Answer and joined in a motion for summary judgment, arguing they were not bound by the letter agreement and that it did not constitute a restrictive covenant running with the land they purchased. Appellants filed their own joint motion for summary judgment against all trial defendants. They asserted Touseys and Anglewicz were bound by the letter agreement because they had notice of it prior to purchase of the lots from Shoreline and that the agreement could be enforceable without being determined to be a restrictive covenant.

¶ 11 In an order filed March 1, 2001, the trial court held Shoreline was bound by the letter agreement, but that Touseys and Anglewicz, or any other subsequent purchasers, were not. The trial court granted the motion for summary judgment filed by Touseys and Anglewicz, and denied the motion filed by Appellants. Although there were issues remaining between Appellants and Shoreline, the trial court found all issues between Appellants and defendants Touseys and Anglewicz, were resolved by its order and directed that it be filed as a final order pursuant to 12 O.S. Supp.1995 § 994(A). Appellants appeal from that order.

¶ 12 Summary judgment is appropriate where it appears there is no substan-

---

**2.** Whether the stone part of the abandoned roadbed actually had been a bridge is controvert-

ed, but that issue is not relevant to the determinations on appeal.

tial controversy as to any material fact, and that a party is entitled to judgment as a matter of law. *First State Bank v. Diamond Plastics,* 1995 OK 21, 891 P.2d 1262. All inferences to be drawn from the underlying facts will be reviewed in the light most favorable to the party opposing the motion for summary judgment. *Id.,* at 1266. As the decision involves purely legal determinations, we will examine the pleadings and evidentiary materials *de novo* to ascertain if there is a genuine issue of material fact. *First American Bank and Trust Co. of Purcell v. Oklahoma Indus. Finance Authority,* 1997 OK 155, 951 P.2d 625.

¶ 13 Appellants' first several propositions of trial court error concern the court's findings regarding the letter agreement. The trial court found the letter agreement was a binding contract between Livesays and Shoreline, but was not binding on Touseys and Anglewicz. The court also found the letter agreement was not ambiguous.

¶ 14 Interpretation of contracts, and whether they are ambiguous, are matters of law for the court to determine. *Osprey L.L.C. v. Kelly Moore Paint Co., Inc.,* 1999 OK 50, 984 P.2d 194. Generally, the terms of a contract, if unambiguous, will be accepted in their plain and ordinary sense. *Id.,* at 198. Contract terms are ambiguous only if they can be interpreted as having two different meanings. *Id.,* at 199.

¶ 15 We find the trial court was correct in its assessment the letter agreement was unambiguous. The letter was from Shoreline to Livesays, set out the understanding of the parties as to discussions they had regarding dredging and clearing, and was signed only by Shoreline's representative and Livesays. The agreement, by its terms, bound only Patricia Island Estates [Shoreline] and "its employees, contractors or agents." Appellants fail to demonstrate how a buyer from Shoreline would be included within these latter terms if they are given their plain and ordinary meaning. These terms are not so arcane as to be misunderstood by either party, nor is the term "buyer" which is used elsewhere in the agreement. If buyers were meant to be included in those barred from removing the abandoned roadbed, they could easily have been specifically named.

¶ 16 In the agreement, Shoreline acknowledges it is unalterable and that Shoreline will advise potential buyers of the "permanent presence of the stone bridge." Shoreline concedes it remains unalterably bound by the agreement, but this is a commitment made by Shoreline only, and, in itself, binds no others. Shoreline's obligation to advise potential buyers is a warning that it is permanently bound not to remove the abandoned roadbed, but buyers are not barred from removing it themselves if properly permitted.

¶ 17 Further, we find no controverted material facts which would support finding Touseys and Anglewicz were employees, contractors or agents of Shoreline. Appellants do contend Touseys and Anglewicz were agents of Shoreline because they dredged part of Cove 9 using Shoreline's permit and before they owned property. Even presuming these allegations were true, the issue here is dredging of the abandoned roadbed, which would be done under the authority of a permit issued upon Tousey's application, not Shoreline's. Additionally, Touseys and Anglewicz are owners of real property immediately in the area of the abandoned roadbed and would have standing to apply for and carry out the dredging in their own right. They would not be acting as agent for Shoreline.

¶ 18 Appellants also contend the trial court erred in holding purchasers from Shoreline were not bound by the letter agreement because "[c]ase law provides that covenants will be enforceable whether or not they run with the land when purchasers have actual or constructive notice of the restrictions or covenants." Appellants correctly state the law, but the cases are distinguishable from the facts here.

¶ 19 In *Blackard v. Good,* 1952 OK 309, 248 P.2d 596, the plaintiffs had refused to sell the defendants land to build an animal hospital. The defendants later purchased the land through an agent, with knowledge the original deed from the plaintiffs contained restrictions on building, and began to build an animal hospital. Plaintiffs asked for injunctive relief, which the trial court denied. The Supreme Court reversed, holding:

There is no question that a personal covenant or agreement *affecting lands* will be held valid and binding in equity on a purchaser taking the estate with notice, and it is immaterial that the agreement may not be a covenant which runs with the land. (Emphasis added).

¶ 20 The *Blackard* Court noted the primary question was whether the contract of which the defendants had actual notice contained a restriction against the *use of the land.* In *Blackard,* and other cases utilizing the above rule, the question was whether the purchasers of land taking with notice of a covenant relating specifically to that land should be restricted in the use of the land purchased. *See also, Frey v. Poynor,* 1962 OK 5, 369 P.2d 168; *Morton v. Clearview Homes, Inc.,* 1958 OK 55, 324 P.2d 543; and *Southwest Petroleum Co. v. Logan,* 1937 OK 473, 71 P.2d 759. That part of the letter agreement at issue here was intended to restrict Shoreline's ability to dredge Cove 9, and is only remotely and indirectly related to any use of Shoreline's land by a subsequent purchaser. The uncontroverted facts do not support application of the *Blackard* equitable rule under the facts here.

¶ 21 Appellants assert the trial court misinterpreted the meaning of a provision in the letter agreement which recognized the right of purchasers from Shoreline to "perform environmentally appropriate clearing below the GRDA take line" after obtaining the proper permit. The trial court did note from the bench that this provision seemed to authorize purchasers to dredge. However, after Appellants had asserted the different procedures for G.R.D.A. "clearing" permitting and "dredging" permitting, the trial court stated the real problem with the agreement was the provision limiting applicability to Patricia Island Estates, its employees, contractors or agents. Additionally, the trial court made specific findings in its judgment, including that neither Touseys nor Anglewicz "have ever been an owner, manager, officer, director, member, employee, contractor, or agent of Shoreline", but did not mention the "clearing" provision. We are unconvinced the trial court materially relied on that provision in reaching its determination. Appellants' assertion has no merit.

 ¶ 22 The language of the letter agreement is clear and unambiguous. While Livesays contend they intended to limit dredging by purchasers from Shoreline, that is not what the agreement provides. We cannot read into contracts words or terms it does not contain. *King Stevenson Gas & Oil Co. v. Texam Oil Corp.,* 1970 OK 45, 466 P.2d 950. "The law will not make a better contract than the parties themselves have seen fit to enter into, or alter it for the benefit of one party to the detriment of another". *Id.,* at 954.

¶ 23 We find no controversy as to any material fact. The trial court's judgment is correct as a matter of law and is therefore AFFIRMED.

¶ 24 GARRETT, J. and BUETTNER, P.J., concur.