[S. F. No. 3578.   Department Two.—June 8, 1906.]

## A. B. HUNT, Appellant, v. A. F. JONES, OROVILLE WATER COMPANY, et al., Respondents.

COMPLAINT TO ENFORCE WATER-RIGHTS — JUDGMENT UPON GENERAL DEMURRER—GROUND OF SPECIAL DEMURRER NOT CONSIDERED.—Upon appeal from a judgment rendered upon general demurrer to a complaint for an injunction to restrain the corporation defendant from shutting off the waters of a stream to which plaintiff by fair intendment alleged title by grant from an association under which defendant claimed title, any ground of special demurrer for uncertainty or indefiniteness, as to whether plaintiff took title from the association or from a corporation of the same name which succeeded to the rights of the association, and from which defendant immediately derived title, cannot be considered.

ID.—PERSONAL COVENANT AS TO WATER-RIGHT AFFECTING LAND—AGREED RATE OF PAYMENT—PURCHASERS WITH NOTICE—ENFORCEMENT IN EQUITY.—It is immaterial whether a covenant by a water company to charge plaintiff no higher rate than ten cents per inch for every twenty-four hours' use upon his land of water purchased from the water company by plaintiff for a large price, sufficient to irrigate twenty acres of plaintiff's land, was a covenant running with the land or was a personal covenant in relation to the water-right affecting his land, since in either case equity will enforce the covenant against purchasers from the water company with notice of the facts, who will be compelled to furnish water on the same terms and will be restrained from shutting off the water for non-payment of a higher rate.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

A. B. Hunt, Appellant, *in pro. per.*

Corbett & Goodwin, for Respondents.

LORIGAN, J.—This is an appeal from a judgment, and involves the validity of an order sustaining a general demurrer interposed to an amended complaint by the defendant Oroville Water Company. The complaint (it is quite lengthy, and we give such a synopsis of it as we deem pertinent on this appeal) alleged that in 1887 an association known as the Thermalito Colony Company was the owner of two or

three thousand acres of land near Oroville, Butte County, and was the owner at the same time of a large supply of water; that it had surveyed said land into lots and blocks for a colony site, and had laid mains and water-pipes along the avenues of said tract, and was running water through them for the purpose of irrigating said lots and blocks so as to enable the production thereon of citrus fruits; that thereafter, and prior to 1889, plaintiff entered into a written contract with said company to purchase, and did purchase, a block of land consisting of twenty acres; that as part of said contract and sale said company sold to plaintiff a sufficient amount of water from its said water-supply to irrigate said twenty acres of land so that it would grow citrus fruits thereon, which water was to be delivered by said company upon said twenty acres in such quantities as plaintiff might need, plaintiff to pay said company not to exceed ten cents per inch, miner's measurement, for each twenty-four hours the said water was run and used by him; that the covenant selling said water and agreeing to furnish the same was made a covenant running with the land then owned by said company, and also with the water-supply, mains, ditches, and water-pipes owned and used by it; that plaintiff paid to said company for said twenty acres of land and said water the sum of two thousand dollars cash; that the main and only inducement for the purchase of the said land was the sale of said water as aforesaid, and that the land without the water was not of the value of five dollars an acre; that thereafter said company not having conveyed said land and water to plaintiff, and the legal title being in defendant A. F. Jones, at the request of the company, Jones conveyed to plaintiff said land and water, which conveyance in 1894 plaintiff caused to be recorded in Butte County. At the time of his purchase of the land and water the company had laid down mains and pipes for carrying it to the tract purchased by him; that relying on the promises, covenants, and agreements of said company to furnish said water at the price agreed, said plaintiff set out said twenty acres in olive and orange trees, and said company furnished plaintiff with water from said pipes and mains according to the terms of the agreement for many years thereafter; that in 1898 the defendant Oroville Water Company purchased from said Thermalito Colony Company its entire water-supply, water-

ditches, water-rights, pipe-lines, and mains, and its right to run water in said pipes and deliver and sell the same to persons who had purchased land from said colony company in said tract, and ever since said date has been selling and furnishing water to said persons by means of said water-supply and mains aforesaid; that at the time of the purchase by said water company it knew that plaintiff had purchased said twenty acres of land from the Thermalito Colony Company and a sufficient amount of water to irrigate the same, according to the terms herein referred to, and had for many years been in the actual use and possession of said land, growing citrus fruits thereon, and irrigating the same from said water supply purchased by him from the colony company; that the said Oroville Water Company after its purchase and up to 1902 furnished water to irrigate said piece of land according to said terms; that in said year it notified plaintiff that he would have to pay one hundred dollars a year for water-rights to irrigate said lot, and if half thereof was not paid by the first of April of that year the water would be shut off from use by him; that if said water is shut off as threatened by defendant and the said orange and olive trees not irrigated each month they will die; that said land without said water to irrigate said trees would be worthless; that there is no means or way by which said land can be irrigated except by said water-supply, water-pipes, and mains of defendant, and that to shut off said water would cause him irreparable damage and injury; that the plaintiff had already expended in the care and growing of said trees more than four thousand dollars. The prayer of the complaint was for a perpetual injunction restraining defendant corporation from shutting off the waters as threatened, and for a decree determining his right to said water as contracted for and conveyed by the Thermalito Colony Company to him.

As we have said, the demurrer which was sustained to the complaint was a general one. Much of the brief of respondents is devoted to the point that the allegations of the complaint are indefinite in several respects, particularly as to whether plaintiff purchased his land and water-rights from the Thermalito Colony Company, an association, or the Thermalito Colony Company, a corporation, which latter corporation, while we have not mentioned it heretofore in our state-

ment, was composed of the same persons who had constituted the association, and, by the allegations of the complaint, it appears therefrom succeeded to all the rights of the association to the water-supply, water-mains, and right to furnish water to said colony, and subsequently transferred them to the defendant Oroville Water Company. We think a fair consideration of the complaint shows that the plaintiff alleged that he purchased his land and water from the Thermalito Colony Company, the association. But if the complaint were indefinite or uncertain in this respect, it was subject to a special and not a general demurrer. (*Amestoy* v. *Electric R. T. Co.*, 95 Cal. 311, [30 Pac. 550]; *Lawrence Nat. Bank* v. *Kowalsky*, 105 Cal. 41, [38 Pac. 517]; *Daggett* v. *Gray*, 110 Cal. 169, [42 Pac. 568].)

It is further insisted that the contract with reference to the water-supply for the benefit of plaintiff's land made by the association was not a covenant running with the land, but, at most, a personal covenant which was not binding upon the water company defendant as assignee of the Thermalito Colony Association. We do not discuss the point as to whether the covenant here in question was one running with the land so as to bind the assignee of the water company as grantee of plaintiff's covenanter, the Thermalito Colony Company, association, because we think that, treated simply as a personal covenant or agreement under the allegations of the complaint, a court of equity would be warranted in enforcing it against the defendant. There can be no doubt of the proposition that personal covenants or agreements bestowing benefits and imposing restrictions upon the use of land may be enforced in equity, where a subsequent purchaser from the covenanter takes with notice of an existing equitable claim or interest in favor of another.

The general rule is stated in Pomeroy's Equity Jurisprudence (2d ed., secs. 688 and 689): "The third, and, in its practical effects, by far the most important rule is, that a party taking with notice of an equity takes subject to that equity. The full meaning of this most just rule is, that the purchaser of an estate or interest, legal or equitable, even for a valuable consideration, with notice of an existing estate, interest, claim or right, or to some subject-matter, held by a third person, is liable in equity to the same extent and in the

same manner as the person from whom he made the pur-
chase; his conscience is equally bound with that of his vendor,
and he acquires only what his vendor can honestly transfer.
. . . A purchaser with notice of a prior contract to sell or
lease takes subject to such contract, and is bound in the
same manner as his vendor to carry it into execution. . . .
On the same principle, if the owner of land enters into a
covenant concerning the land, concerning its uses, subjecting
it to easements or personal servitudes and the like, and the
land is afterwards conveyed or sold to one who has notice of
the covenants, the grantee or purchaser will take the premises
bound by the covenant, and will be compelled in equity either
to specifically execute it, or will be restrained from violating
it; and it makes no difference whatever with respect to this
liability in equity whether the covenant is or is not one which
'in law runs with the land.' "

In *Whitney* v. *Union Railway Co.*, 11 Gray 359, [71 Am.
Dec. 715], it is said: "The precise form of the nature of the
covenant or agreement is quite immaterial. It is not essential
that it should run with the land. A personal covenant or
agreement will be held valid and binding in equity on a
purchaser taking the estate with notice. It is not binding
upon him merely because he stands as an assignee of the party
who makes the agreement, but because he has taken the
estate with notice of a valid agreement concerning it which
he cannot equitably refuse to perform."

These authorities undoubtedly sustain the proposition that
where a proper case is presented, equity will enforce a personal
covenant or agreement relative to land as effectually as would
a court of law had the covenant been one clearly running with
the land. And we think there can be no question but that
the facts alleged in the complaint show a proper case for
the application of the rule in the case at bar. There is
every equitable reason for its application, and none to be
suggested why it should not be applied. The Oroville Water
Company acquired its title to the waterworks and right to
distribute water throughout the colony tract from the com-
pany from which plaintiff had purchased his land and right
to the water, with full knowledge of the interest that plaintiff
had acquired under his deed. It undoubtedly was advised
of the situation and surroundings and knew that the land on

which this water was being distributed was only valuable by reason of the fact that water to irrigate it could be provided. The sole inducement to the purchaser of the tract acquired by plaintiff was that he could acquire a water-right in connection with it; that without it the land was practically worthless, and he did acquire this right practically for a cash consideration of nineteen hundred dollars—the right to have water distributed on his land at certain fixed rates, and on the faith of such purchase and contract set out his orchard and expended thousands of dollars in caring for it; that without the use of this water his orchard would perish and his investment become a total loss. All these facts must, in the nature of things, have been known to the defendant corporation when it purchased from the association, and it particularly knew, so it is alleged, that plaintiff had purchased his land and accompanying water-right from its grantor. Taking all these facts into consideration, it would be clearly inequitable, after plaintiff had paid a full consideration of nineteen hundred dollars for the water-right, which he was enjoying at the time that the defendant made its purchase from the association, to say that the association could transfer all its interest in the water-supply to the defendant, and that though the latter knew of plaintiff's purchase and right thereunder, it nevertheless acquired the property from the association free from any claim or interest in favor of plaintiff as to the particular water-right which he had previously purchased, and likewise free from any obligation the association had incurred or assumed relative to it in his favor. If this were true, it would follow that defendant would be under no obligation to furnish plaintiff with any water for irrigation at all, with the inevitable result, if it did not, that his orchard would perish and his property become worthless. The facts recited in the complaint we think set forth a proper case in which equity should interfere to prevent this result, and that the order sustaining the demurrer was erroneous.

The judgment is reversed, with directions to the lower court to overrule the demurrer and allow the defendant to answer.

Henshaw, J., and Beatty, C. J., concurred.

Hearing in Bank denied.