[Civ. No. 2458. Fourth Appellate District.—December 4, 1939.]

MARGARET L. THEW, Respondent, v. CORA A. THEW, Appellant.

Fred A. Watson for Appellant.

John A. Hadaller for Respondent.

GRIFFIN, J.—This is an action to enforce the provisions of a property settlement agreement upon the theory that the covenant therein contained constitutes a covenant running with the land. The parties filed a stipulation setting forth the facts. The plaintiff (herein referred to as "first wife") had instituted an action for divorce from one Hollie H. Thew. While the action was pending, the plaintiff and Hollie H. Thew (herein referred to as "husband") entered into a property settlement agreement dated February 21, 1933. Included in the property divided by the agreement was a section of desert land which is the land involved in this action. The title to this land stood in the name of the husband, although it constituted community property. This section of land, as well as other real and personal property, was conveyed under the agreement by the first wife to the husband, the conveyance being thus expressed: "(1) The party of the second part, (the wife) for and in consideration of the covenants and agreements hereinafter contained, does by these presents absolutely and forever relinquish, release, surrender, transfer, grant and convey to the party of the first part all the right, title and interest she may now have as a joint

tenant, tenant in common, or otherwise, and any and all right, title and interest she may now have or hereafter acquire as the wife of the party of the first part in and to all that certain real and personal property described as follows, . . . all of section 1, township 8, north range 4 East, S. B. B. M. consisting of 640 acres and 38/100 acres, subject to certain reservations and exceptions now of record, reserving the right to extract Jasper from 20 acres of said land . . . said real and personal property hereinbefore described to be and become, by virtue of this instrument, the sole and separate property of the party of the first part . . . said party of the first part . . . accepts the said real and personal property as his sole, and separate property."

Other real and personal property was conveyed by the husband to the first wife, with similar recitals. The agreement contains mutual waivers of interest. In addition to setting forth these mutual conveyances and waivers, the document contains a covenant by the first wife and several covenants by the husband. One of the covenants of the husband is thus expressed: (4) The Party of the first part does further contract and agree that he will pay to the party of the second part ten (10%) per cent of the *net profit* derived from *the sale* . . . (of the property here in question) *or* in the event of the extraction of any mineral deposits herefrom, ten (10%) per cent of the profit derived from such mineral deposits." (Italics ours.) After the agreement was executed, an interlocutory decree of divorce was granted, followed by the final decree of divorce on September 4, 1934. Immediately thereafter, to wit, on September 5, 1934, the husband and the appellant (herein referred to as "second wife") were married. It was stipulated that within six months after her marriage, the second wife was informed of the property settlement agreement and the covenant in question and had actual knowledge thereof.

The court found that appellant and her husband, from the money received from the sale of minerals extracted from the property in question under contract with the Chamberlain Company, since January 4, 1937, paid respondent one-tenth of the sums which they received until the death of Hollie H. Thew on May 14, 1937.

In the verified complaint there appears as exhibit A a quitclaim deed of the property in question dated *March 18, 1935,*

executed by Margaret L. Thew to Hollie H. Thew, and recorded *January 18, 1937,* at *10:10 A. M.,* which contains the following provision: "In consideration of this conveyance, the said Hollie H. Thew hereby agrees to pay to the said Margaret L. Thew ten per cent (10%) of the net profit he may receive from the sale of said real property, or in the event of the extraction of any mineral deposits therefrom, then ten per cent (10%) of the net profit he may receive from such mineral deposits." The due execution of this deed is admitted by the verified answer of Cora A. Thew.

On January 16, 1937, conveyances were executed which resulted in placing the land in question, as well as other property, in the names of the husband and second wife as joint tenants. These instruments were recorded *January 18, 1937,* at *10:11 and 10:12 A. M.* respectively.

Subsequent to the death of the husband, the second wife received $985.74 from the sale of bentonite extracted from the land in question. The second wife is still the owner of the land, except as her right, title or interest is or may be affected by the covenant to which we have referred. The stipulation of the parties attempted to dispose of all admissions contained in the pleadings in conflict with the facts set forth in the stipulation.

By the judgment the court decreed "That Margaret L. Thew, the plaintiff, do have and recover of and from the defendant Cora A. Thew, the sum of $98.57, which is ten per cent net of $985.74 admitted by defendant to have been received . . . for Bentonite extracted . . . from the land . . . pursuant to an agreement since May 14, 1937" and that ". . . in addition . . . is entitled to 10 per cent of the net of any and all additional money received or to be received by defendant for Bentonite and/or other mineral substance extracted and sold from the land . . . and is likewise entitled to 10% net of the amount which shall be received from the sale of the said land as a whole . . . whenever the same may be sold" and "that the covenant in the property settlement agreement . . . whereby Margaret L. Thew quitclaimed and granted her rights . . . to Hollie H. Thew . . . and whereby Hollie H. Thew agreed to give said wife 10% net of sale price of the said land or in the event of extraction of any mineral deposits therefrom, that he would pay her 10% net of the profits derived from the sale of such

mineral deposits, same being the consideration going to Margaret L. Thew from Hollie H. Thew for the conveyance of the rights of said wife . . . , constituted and does constitute a covenant running with the said real property so conveyed; and that the said plaintiff is now vested with an estate, interest, lien and incumbrance on, to or with respect to said real property by reason of said covenant'' and ''that Cora A. Thew is the owner of and entitled to possession of the said real property, subject to the interest, estate, lien, covenant and incumbrance thereon in favor of plaintiff. . . . ''

From this judgment the defendant has taken this appeal.

Appellant argues that the covenant is void for uncertainty; that it reads in the disjunctive ''or'' and that therefore the parties to the agreement did not contemplate that the first wife should participate in both the sale price and the profit from the mineral extracted; that the agreement does not set forth the means by which the ''profit'' as that term is used, can be ascertained, citing Civil Code, section 1598, and *Prince* v. *Lamb*, 128 Cal. 120, 126 [60 Pac. 689].

Respecting the provision relating to the profit from the extraction of mineral deposits, it appears to us that the term ''profit'' in its ordinary interpretation as here applied, clearly indicates and embraces the excess of returns over expenditures and cost of production. The record indicates that the second wife and her husband made payments to the first wife from the profits above mentioned under the property settlement agreement for a period of several months. Apparently there was no confusion, during that period, as to its interpretation, or the intention of the parties.

It is a general principle that whenever uncertainty arises concerning the provisions of an agreement the court will always inquire as to how the parties themselves understood the language and when they have acted upon that understanding, the finding of the court that it should be construed as acted upon will not be disturbed by an appellate tribunal. (*Sutliff* v. *Seindenberg, Stiefel & Co.*, 132 Cal. 63 [64 Pac. 131, 469]; secs. 1649, 1655 and 1656, Civ. Code.)

The remaining portion of the covenant relating to the ten per cent of the net profit to be derived from ''the sale'' of the land is deserving of more serious consideration. Since no sale actually took place, we do not have the conduct of the parties to guide us but must resort to inferences

and other facts proven and found for its construction. The expressed intention of the parties in the property settlement agreement should determine this point. It seems to have been in the minds of both parties to the agreement that a sale of the property was either contemplated at that particular time, or was thought of as a possible happening in the near future, in which event the first wife was to receive her ten per cent of the net profit immediately and which would thus conclude their property division. This seems the more probable because the definite article "the" is used in connection with "sale", instead of the indefinite article "a". Hollie H. Thew may have thought that if any deal for a sale should not be consummated and he should decide to mine the property himself, and reduce its value by mining, respondent should not be deprived of her interest. He provided for that contingency and, therefore, agreed to compensate her for such diminution of the value of the property by mining as would come about in the ordinary process of mining that kind of mineral, namely, bentonite. By mining the property over a period of years, and extracting the mineral that made it valuable as a mine, a sale of the property after such extraction would bring considerably less than if the sale took place shortly after the property settlement agreement. To obtain her total one-tenth of the value of the property, as it existed at the date of the property settlement agreement, she had to receive it from both transactions.

That construction, we think, is rational and logical and should be adopted. Sections 1641 and 1643 of the Civil Code provide: "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other" and "a contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties".

It could not be reasonably contended that the intention of the contracting parties to the property settlement agreement meant a net profit on "every" sale that might or would take place after "the sale" or one sale, or the first sale made after the agreement was signed.     As to the mode or method of arriving at what is commonly understood to be the net profit from "the sale" section 1656 of the Civil Code helps

to determine that: "All things that in law or usage are considered incidental to a contract to carry. it into effect, are implied therefrom, unless some of them are expressly mentioned therein, when all other things of the same class are deemed to be excluded." What is usage in the division of a net profit from a sale of land? Were this a matter of a sale among partners some of whom had expended more labor and time in the development of property than the others, usage might decree that those who had spent more money, time and labor on the development should receive more of the net profit, but here there is no evidence of inequality in time and labor or money. For all the record shows, Hollie H. Thew did not personally mine the land and whatever labor might have been hired to develop it originally, as we can readily assume from the stipulation of fact that it was community property, was paid out of community funds. The mining of the land by the Chamberlain Company from which the revenue was derived did not impose any special labor or expenditure on Hollie H. Thew or the appellant. Hence, appellant's argument that the parties may have not only contemplated the actual cash outlay of the husband in the acquisition and maintenance of the property but also the unliquidated demands as recompense for services of the husband in supervising and maintaining the property is not only not based upon any facts in evidence supporting the view, but is answered by the stipulation that the property was community property, and was not personally mined by the owner.

We observe that there is no specific law defining what are "net profits from sales". Since the language of the covenant relates "ten (10%) per cent of the net profit. derived from the sale" the implied parts can relate only to net profit from the sale. The customary and usual costs of the sale are an escrow fee, a policy of title, execution and recording of deeds, payment of taxes, judgment liens, if any, relator's commission for making the sale, etc. Excluding the original cost to the community estate, what is left is a "net profit". This particular property was community property at the time of making the agreement. Subsequent to the execution and delivery of that instrument, it became the sole and separate property of the husband, Hollie Thew, but subject to the reservation and covenant. On the basis

of the community interest prior to the property settlement agreement, we cannot see that Hollie Thew would have been in any position to make an extra claim for the purchase price of the land, because that came out of the community earnings and all other expenditures made on the land prior to that property settlement agreement would be in the same category.

As to any extra claim for management or expenditure of work and time after the separation, there is no evidence that he expended any extra time on it or mined the land himself. The only rational charges he could have had in mind would have been the ones which came about in the sale of the land as we have enumerated above. To hold otherwise would result in a forced construction predicated on facts not in evidence and the drawing of inferences from facts not proven. If, as we have seen, Hollie Thew intended to give his wife the one-tenth of the net value of the land as of the day and date of the property settlement agreement, either by an immediate sale thereafter, which would have concluded his pact with his first wife, or, lacking a sale, then by ten per cent of the money received by him as royalties, we must also assume that, whether he himself remained alive to effect the payment of that one-tenth value either by a sale or by mining the land, the original intention to pay the one-tenth of the value of the land could not expire with his death if the debt was not fully paid, but would have to pass on to those who took the title impressed with that obligation. If he did not in truth and fact intend that she should have the one-tenth of the value of the land, he most likely would not have made the provision that it was to come out of the land itself. Doubtless he would have made some other provision for the payment of the one-tenth of the value of the land, either in instalment payments that had nothing whatever to do with the land, or provision for payment of a lump sum based on an agreed valuation of the land as of the date of the property settlement agreement. This he did not do. It is a fair construction that the one-tenth was to come out of the land and only the land.

Section 1654 of the Civil Code states the rule of construction which is most applicable to the facts related. "In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most

strongly against the party who caused the uncertainty to exist. The promisor is presumed to be such party; . . . ''

Appellant argues that there was no intention that the first wife should retain any interest in the property. In the instant case Cora A. Thew, the appellant, took title to the land with full and actual knowledge of the covenant concerning the percentage respondent was to receive out of the land, and this knowledge she had long prior to the time she acquired title and long prior to the making of the agreement for the mining of the property with the Chamberlain Company. The quitclaim deed from the first wife to Hollie H. Thew was recorded prior to the recordation of appellant's joint tenancy deed. She had full knowledge of similar reservations and covenants therein.

We will not endeavor to discuss, analyze, or distinguish the difference between personal covenants and covenants which run with the land. In so far as the facts of this case are concerned, a complete answer is stated in *Richardson* v. *Callahan,* 213 Cal. 683 [3 Pac. (2d) 927], where the court said: ''The marked tendency of our decisions seems to be to disregard the question of whether the covenant does or does not run with the land and to place the conclusion upon the broad ground that the assignee took with knowledge of the covenant and it was of such a nature that when the intention of the parties coupled with the result of a failure to enforce it was considered, equity could not in conscience withhold relief.'' (See, also, Pomeroy's Equity Jurisprudence, 2d ed., secs. 688 and 689; *Whitney* v. *Union Ry. Co.,* 11 Gray (Mass.), 359 [71 Am. Dec. 715], 7 R. C. L., p. 1102, sec. 18; Washburn on Real Property, vol. 2, sec. 1205; *Sacramento S. F. L. Co.* v. *Whaley,* 50 Cal. App. 125 [194 Pac. 1054].)

We conclude, therefore, that having taken title with knowledge of the covenant and having acted upon it without evidencing any uncertainty as to its provisions, and knowing the intention of the parties who made the covenant, appellant is bound both in law as well as in equity, to carry out the covenant according to the original intention of the makers thereof.

The judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 1, 1940.