[Civ. No. 26530. Second Dist., Div. One. July 31, 1963.]

G. M. RUSSELL et al., Plaintiffs and Appellants, v. PALOS VERDES PROPERTIES et al., Defendants and Respondents.

Roy B. Woolsey, Aidlin, Martin & Mamakos, Arthur L. Martin and Richard B. Cutler for Plaintiffs and Appellants.

Harold H. Streight, Mason, Kinley & Wallace, William Kinley and Owen F. Goodman for Defendants and Respondents.

LILLIE, J.—Plaintiffs Russell sued Palos Verdes Properties (hereinafter referred to as "Properties") and Rolling Hills Community Association of Rancho Palos Verdes (referred to herein as "Association") for declaratory relief and to quiet title to Parcel 1 (approximately 8.6 acres of unimproved land), Parcels 2 and 3 (easements for "road purposes") and Parcel 4 (.019 acre, not here involved), seeking relief from certain restrictions contained in Agreement and Declaration No. 150-W. Defendants cross-complained to enjoin plaintiffs from constructing any building on the land without first securing the approval of Association, and from granting to others the unrestricted right to use Parcels 2 and 3, easements for road purposes, except upon the sale of Parcel 1 as a unit. Judgment in favor of defendants and cross-complainants decreed that plaintiffs are the owners of Parcels 1, 2, 3 and 4, subject, as to Parcel 1 only, to easements and rights of way for road and other purposes over certain portions thereof and across and under certain other described lands, with the right of Properties to grant to others, and subject further, as to Parcels 1, 2 and 3, to all "restrictions,

conditions, covenants, reservations, liens and charges set forth in Agreement and Declaration No. 150-W''; that Agreement and Declaration No. 150-W is a valid and existing agreement enforceable against plaintiffs; and that the interests, rights and easements reserved by Palos Verdes Corporation, as set forth in Agreement and Declaration No. 150-W and in the deed to the Douglases, are now held by Properties. It also enjoins plaintiffs, for the term prescribed in Agreement and Declaration No. 150-W, from constructing any building on Parcel 1 without approval of Association; and permanently enjoins them as owners of Parcel 1, except with prior consent of Association, from conveying the right to others or permitting others any right to use the road easements (Parcels 2 and 3) or any portion thereof except for use normally associated with the use of Parcel 1 as a unit for one single family residence. Plaintiffs appeal from the judgment.

In 1926 Palos Verdes Corporation (hereinafter referred to as ''Corporation'') acquired certain lands on the Palos Verdes Peninsula. Rolling Hills Community Association, a nonprofit corporation, is a homeowners' protective association the membership of which consists of all persons owning land in the area subject to an Agreement and Declaration to which it is a party. This area is known as the ''Community Area'' which has the same boundaries as the City of Rolling Hills, over which Association has jurisdiction and control. The Association has the right, authority and duty to engage in various activities to develop and improve the Area, maintain all roads therein and a system of gates and guards at all entrances to prevent entry of the public, and provide members with police protection; and to actively enforce the provisions of all Agreements and Declarations to which it is a party.

On May 14, 1936, Association and Palos Verdes Corporation, while the latter was still owner of all lands therein described, executed and recorded Declaration of Establishment of Restrictions No. 150 (Ex. D) containing, among other things, a general plan of restrictions; it designated and created the initial Community Area. Thereafter, the Corporation began selling various parcels of its holdings, but before conveying the same and for the future use of the land, imposed on each the above restrictions in the form of separate Agreements and Declarations between it and Association. Thus, up to June 18, 1945, the date of the execution of Agreement and Declaration No. 150-W, 22 additional Agreements and Declarations (Nos. 150-A through V (Exs.

E through AA)) were entered into between Association and Corporation, and recorded. Particularly with reference to articles therein entitled "General Basic Restrictions" (art. I), "Rolling Hills Community Association" (art. II), "Zoning" (art. III), and "Duration, Enforcement, Amendment" (art. IV), all 22 instruments (except 150-A) contain the same provisions, restrictions, covenants and conditions—identical with those in Agreement and Declaration No. 150-W. Each instrument describes a portion of the present Community Area under the jurisdiction of Association the owners of which are Association members; included in the lands were all parcels lying along the northerly side of Crest Road between Parcel 1 and property affected by Declaration of Establishment of Restrictions No. 150. The 22 separate Agreements and Declarations and Declaration of Establishment of Restrictions No. 150 were designed to establish a general plan for the development, improvement and protection of the Area under which it has become "a rigidly-restricted, high-class, country-style, residential community." (Finding No. XXIII.) Association, in executing these instruments did so as the representative, and for the benefit, of its members in the use of their properties in the Area. The Association owns none of the land nor has it ever owned any of the property under its jurisdiction.

On June 18, 1945, Corporation, then owner of Parcels 1, 2 and 3, and Association executed Agreement and Declaration No. 150-W (Ex. BB), the provisions, restrictions, covenants and terms of which are substantially the same as those set forth in Agreements and Declarations Nos. 150-B through V. After the preamble in part referring to Association's power under certain provisions of Declaration of Establishment of Restrictions No. 150 to enforce the restrictions, to the covenants and reservations imposed upon the property described therein, and to the restrictions imposed upon other land subject to similar Agreements and Declarations to which it is a party, appears the following agreement: "That it is agreed by and between Palos Verdes Corporation and Rolling Hills Community Association of Rancho Palos Verdes that the said property above described (Parcels 1, 2 and 3) shall be held, sold and conveyed subject to the restrictions, conditions, covenants, reservations, liens and charges hereinafter set forth, and that after recordation of this Declaration and Agreement in the office of the County Recorder said Association shall in respect to said property have all the

rights and powers herein set forth and also the right and duty to grant to the owners of said property, their grantees and assigns, memberships in the Association, all as herein provided, and said Association and its Board of Directors do hereby approve this Declaration of Restrictions and agree to be bound thereby.'' Corporation, having recited it was about to convey Parcel 1 in portions, thereafter declared that it has ''established the General Plan for the protection, maintenance, improvement and development of said property, and has fixed and does hereby fix the general basic and local restrictions, conditions, covenants, reservations, liens and charges upon and subject to which all lots, parcels and portions of said property shall be held, leased or sold and/or conveyed by it as such owner, each and all of which is and are for the benefit of said property and of each owner of land therein and shall inure to and pass with said property and of each and every parcel of land therein and shall apply and bind the respective successors in interest of the present owner thereof, . . .'' Article I of Agreement and Declaration No. 150-W sets forth ''General Basic Restrictions,'' article III, ''Zoning'' and Article V, ''Local Restrictions''; article II grants Association various rights and powers, and among others, imposes upon it the obligation of enforcing the liens, charges, restrictions, conditions and covenants therein set forth for the benefit of owners of property at any time within the jurisdiction of the Association, and to commence and maintain actions to restrain and enjoin the breach of any restrictions, conditions or covenant set forth in any declaration affecting said property. (Art. II, § 2[m].)

After Agreement and Declaration No. 150-W was executed and recorded, Corporation, in November 1945, sold Parcel 1 as a unit, together with Parcels 2 and 3, easements for ''road purposes,'' to R. R. and B. L. Douglas. The grant deed made the conveyance ''subject to: 1. (Taxes) 2. . . . each and every provision, condition, restriction, reservation, lien, charge, easement and covenant set forth in that certain Agreement and Declaration No. 150-W executed by Palos Verdes Corporation, filed June 26, 1945, as Document No. 2443, all of which provisions, conditions, restrictions, reservations, liens, charges, easements and covenants are herein incorporated in this deed to the same effect as if set forth in full herein. 3. The above described premises shall constitute a single building site for one single family dwelling.''

Later Duke and Memory became owners of Parcels 1, 2 and

3, and 4 (not included in Agreement and Declaration); in November 1952, they conveyed to Corporation an easement over Caballeros Road, a portion of Parcel 1.

Thereafter C. M. Douglas became the owner. Plaintiff Russell, acting as her attorney in fact and under article I, section 14, Agreement and Declaration No. 150-W, filed on her behalf with Association plot plan (Ex. B) and application for permission to subdivide Parcel 1; it was denied. (The lower court confirmed that the plan submitted "was not reasonable or appropriate with respect to the topography of the property and with respect to the division of other properties within the vicinity of said Parcels 1 and 4." (Finding No. XI.)) During the course of these proceedings, and on July 17, 1959, plaintiffs, Russell and his wife, became owners of the property. The grant deed provided that it passed to them free and clear of encumbrances "except conditions, restrictions, reservations, covenants, easements, rights and rights of way of record." Plaintiffs Russell then submitted to Association for its approval plans and specifications for a residence to be erected on Parcel 1; approval was denied. Plaintiffs nevertheless commenced construction; they were preliminarily, now permanently, enjoined.

In their opening brief, acknowledging only the unilateral declaration of restrictions by Palos Verdes Corporation and erroneously designating Agreement and Declaration No. 150-W as "Declaration No. 150-W," and ignoring the executed bilateral agreement between Corporation and Association contained therein, appellants argue that inasmuch as the Corporation did not divide Parcel 1 no mutually enforceable restrictions were created thereon (*Werner* v. *Graham*, 181 Cal. 174 [183 P. 945]), and since respondents own no land in the Area they cannot enforce the restrictions. (*Kent* v. *Koch*, 166 Cal.App.2d 579 [333 P.2d 411].)

There is no claim that mutually enforceable restrictions were ever created, nor has there been an attempt to enforce any restrictions as covenants running with the land or any rights arising out of the unilateral declaration of restrictions; and it was not on this basis that the lower court found the restrictions created by Agreement and Declaration No. 150-W to be enforceable against plaintiffs. Yet, it was not until their reply brief that appellants made any effort to meet the real issue—whether the restrictions arising out of Agreement and Declaration No. 150-W entered into by Asso-

ciation with Corporation, the then owner of land adjacent to land subject to the jurisdiction of Association by virtue of other like Agreements and Declarations, are enforceable in equity against plaintiffs, Corporation's remote successors in interest who acquired title with knowledge, actual and constructive, of the existence of Agreement and Declaration 150-W and Association's interest in its enforcement.

In addition to the unilateral declaration of restrictions which failed to create mutually enforceable restrictions, Agreement and Declaration No. 150-W contains a complete bilateral agreement between Association and Corporation whereby, in exchange for the benefits to be received from Association by way of maintenance, improvement and development of the Area and its active enforcement of the same restrictions against all other owners in the Area arising out of Agreements and Declarations to which it is a party, Corporation agreed to hold, sell and convey Parcels 1, 2 and 3 subject to the restrictions, conditions, covenants, reservations, liens and charges set forth in subsequent articles of the instrument, and that a continuing lien shall be imposed on said property. The rights Association seeks to enforce are derived from this bilateral agreement. Appellants would have us declare the entire instrument void because the Corporation did not divide Parcel 1, but conveyed it as a unit. While division of Parcel 1 by the Corporation was a condition precedent to the effectiveness of its unilateral declaration of restrictions to create valid mutually enforceable restrictions or covenants running with the land, it had no such effect on the validity or enforceability of the executed bilateral agreement. Immediately upon its execution, even before the original conveyance of Parcel 1, the bilateral agreement became a binding contract enforceable by either Association or Corporation (art. IV, § 10) ; and nowhere in the record have plaintiffs claimed otherwise. It has since remained valid and enforceable. While in the preamble the Corporation contemplated a division of Parcel 1, nothing in Agreement and Declaration No. 150-W required it to subdivide or prevented it from selling Parcel 1 as a unit subject to the restrictions contained therein.

Covenants, if they are to run with the land, must conform to certain legal requirements; none were herein created. However, if because of absence of essential requirements a covenant does not run with the land, equity will, in a proper case, enforce the obligation, even though of a per-

sonal nature, at the suit of the original covenantee against the grantees of the covenantor who acquired the land with notice of the covenant. This doctrine was first applied over a hundred years ago in *Tulk* v. *Moxhay* (1848) 41 Eng. Rep. 1143, and has been consistently followed in California. (*Los Angeles Terminal Land Co.* v. *Muir*, 136 Cal. 36 [68 P. 308]; *Hunt* v. *Jones*, 149 Cal. 297 [86 P. 686]; *McBride* v. *Freeman*, 191 Cal. 152 [215 P. 678]; *Martin* v. *Holm*, 197 Cal. 733 [242 P. 718]; *Wayt* v. *Patee*, 205 Cal. 46 [269 P. 660]; *Richardson* v. *Callahan*, 213 Cal. 683 [3 P.2d 927]; *Thew* v. *Thew*, 35 Cal.App.2d 691 [96 P.2d 826]; *Marra* v. *Aetna Constr. Co.*, 15 Cal.2d 375 [101 P.2d 490].) "The marked tendency of our decisions seems to be to disregard the question of whether the covenant does or does not run with the land and to place the conclusion upon the broad ground that the assignee took with knowledge of the covenant and it was of such a nature that when the intention of the parties coupled with the result of a failure to enforce it was considered, equity could not in conscience withhold relief." (*Richardson* v. *Callahan*, 213 Cal. 683, 686 [3 P.2d 927].)

 Thus, personal covenants are enforceable (*Thew* v. *Thew*, 35 Cal.App.2d 691 [96 P.2d 826]; *Wayt* v. *Patee*, 205 Cal. 46 [269 P. 660]; *Barbieri* v. *Ongaro*, 208 Cal.App.2d 753 [25 Cal.Rptr. 471]; *Guarantee Realty Co.* v. *Recreation Gun Club*, 12 Cal.App. 383 [107 P. 625]; *Marra* v. *Aetna Constr. Co.*, 15 Cal.2d 375 [101 P.2d 490]), and aside from the requirement that their enforcement must be equitable, the successor of the covenantor against whom enforcement is sought must have had notice, actual or constructive, of the covenant at the time of the conveyance to him. (*Martin* v. *Holm*, 197 Cal. 733 [242 P. 718]; *Wayt* v. *Patee*, 205 Cal. 46 [269 P. 660]; *Barbieri* v. *Ongaro*, 208 Cal.App.2d 753 [25 Cal.Rptr. 471]; *Thew* v. *Thew*, 35 Cal.App.2d 691 [96 P.2d 826].) But, relying mainly on *Werner* v. *Graham*, 181 Cal. 174 [183 P. 945], and *Kent* v. *Koch*, 166 Cal.App.2d 579 [333 P.2d 411], appellants argue that in addition, the deed containing the restrictions or other instruments of record must show a common plan and that there must be, by map or other method, a designation of the extent of the land affected by the restrictions.

In *Werner* v. *Graham*, 181 Cal. 174 [183 P. 945], and other cases falling within its classification, the parties derived title from a common grantor who was not a party to the action; in *Kent* v. *Koch*, 166 Cal.App.2d 579 [333 P.2d 411], plaintiff

was a subdivider who had divested himself of his interest in the property to be benefited by the restrictions and thus could not enforce them. In the instant case, the Association is the original covenantee; it does not own and has never owned any of Parcel 1 or any land in the Area. It seeks equitable enforcement of a promise restricting the use of Parcel 1 made to it by the then owner, plaintiffs' predecessor, of which promise plaintiffs had both actual and constructive notice when they took title. In *Thew* v. *Thew*, 35 Cal.App.2d 691 [96 P.2d 826], the first wife, the original covenantee, sued on a purely personal covenant contained in a property settlement agreement by which the husband took certain land and agreed to pay to her a percentage of profits from the sale of minerals extracted from the property. Relying heavily on *Richardson* v. *Callahan*, 213 Cal. 683 [3 P.2d 927], the court enforced it against the husband's second wife who acquired the title to the property with full knowledge of the covenant. Directing the result of this case, *Hunt* v. *Jones*, 149 Cal. 297, 301 [86 P. 686], *Wayt* v. *Patee*, 205 Cal. 46, 50 [269 P. 660], and *Richardson* v. *Callahan*, 213 Cal. 683, 687 [3 P.2d 927], is the doctrine stated in *Whitney* v. *Union Ry. Co.*, 77 Mass. (11 Gray) 359 [71 Am.Dec. 715]: "The precise form of the nature of the covenant or agreement is quite immaterial. It is not essential that it should run with the land. A personal covenant or agreement will be held valid and binding in equity on a purchaser taking the estate with notice. It is not binding on him merely because he stands as an assignee of the party who makes the agreement, but because he has taken the estate with notice of a valid agreement concerning it, which he cannot equitably refuse to perform."

Actually, the Association, the original covenantee, became the beneficiary for its members, landowners in the area, of the promise made to it by the Corporation. ■ "To the extent to which the promise is enforceable in equity it creates in the beneficiary thereof an equitable interest in the land of the promisor to which the successors of the promisor are subject as they are to other equitable interest." (Rest., Property, ch. 45; see also § 539, topic B.) ■ Acquiring title with actual or constructive notice of the covenant, the grantees of the promisor "will take the premises bound by the covenant, and will be compelled in equity either to specifically execute it, or will be restrained from violating it, at the suit of the original covenantee or of any other person

who has a sufficient interest, . . . in such performance."
(4 Pomeroy, Equity Jurisprudence (5th ed.) § 1295, p. 846.)

▆▆▆ One cannot read Agreement and Declaration No. 150-W and its reference therein to certain provisions of Declaration of Establishment of Restrictions No. 150, other properties in the Area, the restrictions thereon (contained in 22 Agreements and Declarations), and the obligation of Association to enforce them, without acknowledging that by the consistency of the restrictions contained therein there was created a common plan showing a general scheme for the development, improvement and protection of the Community Area, of which Parcel 1, which adjoined other land in the Area, became a part upon execution of Agreement and Declaration No. 150-W, for the mutual benefit of the various parcels of land in the Area adjoining Parcel 1 held subject to the same restrictions. The owners of these parcels are all members of the Association and owned the same at the time of the original conveyance to the Douglases and, like plaintiffs, were either the remote or original grantees of the Corporation. Each bought his property and improved it in reliance upon the creation and enforcement of the same kind of restrictions on Parcel 1 as on his own; and in accordance with its promise to the Association, the Corporation conveyed Parcels 1, 2 and 3 to the Douglases "subject to" the provisions of Agreement and Declaration No. 150-W and the restriction that Parcel 1 shall constitute a single building site for one single family dwelling. Under Agreement and Declaration No. 150-W Association has the right and the duty to protect the investments of its members in the improvement of their properties by creating and enforcing restrictions on Parcel 1 consistent with those on the properties of its members. Thus, even though Association is not now, and has never been an owner of property in the Area, as the original covenantee it has sufficient material interest in the subject matter of its agreement with Corporation to enable it to secure equitable enforcement thereof (*Payette Lake Protective Assn.* v. *Lake Reservoir Co.* (1948) 68 Idaho 111 [189 P.2d 1009]).

▆▆▆ Inasmuch as Declaration of Establishment of Restrictions No. 150 was expressly referred to in Agreement and Declaration No. 150-W, we perceive no error in its admission in evidence (Ex. D); or in the receipt of the other 22 agreements (Exs. E through AA) to show the nature of the Association's relations with its members and its purpose in enter-

ing into the covenant. (*Townsend* v. *Allen,* 114 Cal.App. 2d 291 [250 P.2d 292].)

We find no reason for not enforcing the personal covenant involved herein at the suit of the original covenantee even though it is not a subdivider, original grantor, grantee, or subsequent grantee of a subdivider or original grantor, as in the majority of cases applying the doctrine.

It would be inequitable to permit plaintiffs to breach the covenant against the original covenantee. Without question plaintiffs took Parcels 1, 2 and 3 with constructive notice of the provisions of Agreement and Declaration No. 150-W; the deed not only put them on notice of the recorded instrument but by express proviso incorporated therein all of its provisions, restrictions and covenants. But of greater import is the actual knowledge plaintiffs had of Agreement and Declaration No. 150-W, Declaration of Establishment of Restrictions No. 150, the 22 other instruments and the plan for the development, improvement and maintenance of the Rolling Hills Community, and Association's interest in enforcing them. Before he ever took title, plaintiff Russell attempted, under the instrument on behalf of the then owner, to obtain Association's approval to subdivide Parcel. 1.

We are not impressed with appellants' argument that the enforcement of the restrictions would be inequitable, or that they are unreasonable. The restrictions imposed on each lot owner in the Area are the same; by their uniformity they were designed to and did establish a general plan for the development and improvement of the Area under which it has become a high-class, country-style, residential community. When each owner in the Area bought his land and invested in a home, he relied upon the creation and enforcement of the same restrictions on Parcel 1. On the other hand, plaintiffs Russell, familiar with the restrictions, *before* they took title consulted a lawyer relative to their enforceability and, upon his advice that they were invalid, bought the property and went into the Area with the admitted intention of subdividing Parcel 1 without regard for the restrictions, the other property owners, or the Area. The lower court specifically found the restrictions to be reasonable; ". . . there has been no change of circumstances or conditions of property adjoining or in the vicinity of . . . Parcels 1 and 4 . . . which would render (their) enforcement, . . . arbitrary, discriminatory, inequitable, oppressive, bur-

densome or unreasonable . . ." (Finding No. XVIII). Moreover, it should be noted that while Association withheld approval of the proposed subdivision of parcel 1 according to the plot plan submitted on behalf of C. M. Douglas as not reasonable or appropriate with respect to the topography of the property or the division or other properties within the vicinity of Parcels 1 and 4, Parcel 1 *is* susceptible of subdivision under "a reasonable plan consistent with the development and division of adjoining properties," and the lower court so found (Finding No. XI). The situation here is not one in which plaintiffs will never be able to subdivide Parcel 1. Presented a proper and reasonable plan consistent with the Area, the Association no doubt will, as it has done with other owners, grant plaintiffs permission to subdivide. But no such plan has yet been submitted or proposed by plaintiffs; instead, they seek to have *all* restrictions declared invalid throwing the property open to unlimited division for any and all purposes without regard to the development and division of adjoining land.

Inasmuch as we deem Agreement and Declaration No. 150-W to be a valid and enforceable agreement and its provisions to be expressly incorporated in the original deed and the deed to plaintiffs, we dismiss appellants' argument that the "subject to" clause in the deeds is ineffective because such reference thereto cannot make an invalid restriction enforceable. While it is true that reference to, and incorporation of the provisions of, Agreement and Declaration No. 150-W in the "subject to" clause cannot create valid covenants running with the land when none before existed, it does operate to bind plaintiffs with the valid restrictive covenants arising out of the bilateral agreement between Corporation and Association and existing at the time Corporation conveyed the land to the Douglases.

Without substance is appellants' position that Agreement and Declaration No. 150-W neither prohibits a division of Parcel 1 nor requires approval of Association therefor. The court below did not directly enjoin plaintiffs from dividing Parcel 1. They were permanently enjoined, except with prior consent of the Association, from "conveying the right to others or permitting to others any right to use the road easements, heretofore described as Parcels 2 and 3 or any portion thereof excepting for use normally associated with the use of said Parcel 1 as a unit for use of one, single family residence." (Judgment, par. 7.) This was

based, not on any prohibition in Agreement and Declaration No. 150-W, but on the theory that plaintiffs have no unilateral right against Association, by their unlimited use of Parcels 2 and 3 (road easements) in connection with the use of Parcel 1, to increase the burden of Association to maintain and repair the private road system in the Area. Parcels 2 and 3 are nonexclusive easements for ''road purposes'' over Portuguese Bend and Crest Roads from the Main Gate to Parcel 1; they were intended to be, and are, according to the conveyances, appurtenant to Parcel 1. In the original deed Corporation limited the use of Parcel 1 to ''a single building site for one single family dwelling''; by doing so it defined and limited the burden on Parcels 2 and 3 to that which would be placed thereon by the use of Parcel 1 as a single family dwelling site. Our courts do not look with favor on increases in the burden upon the servient tenement (*Whalen* v. *Ruiz*, 40 Cal.2d 294 [253 P.2d 457]; *Wall* v. *Rudolph*, 198 Cal.App.2d 684 [18 Cal.Rptr. 123]; § 806, Civ. Code; *North Fork Water Co.* v. *Edwards*, 121 Cal. 662 [54 P. 69]; *Crimmins* v. *Gould*, 149 Cal.App.2d 383 [308 P.2d 786]); and if plaintiffs are allowed to subdivide Parcel 1 such increase is inevitable. Association's 1950 written undertaking with Corporation (Ex. EE) to construct, maintain and repair all roads in the Area, including Parcels 2 and 3 (with funds derived from charges and assessments levied against all owners of property subject to the jurisdiction of Association [see art. III, § 2(b)]) was made in the light of the then existing burdens on the roads and the increased burdens which will normally result from annexations to the Area. Association neither agreed upon nor contemplated the increased burden on its duty to repair and maintain the surface of roads over Parcels 2 and 3, which will necessarily arise out of their unlimited use if Parcel 1 is freed from the restrictions and divided into unlimited building sites resulting in a greater volume and a different kind of vehicular traffic. That this was the basis of the restraint imposed on plaintiffs is borne out by Finding No. XXIX, and the permanent nature of the injunction (Judgment, par. 7) not limited, as in the other restraint, to the term of Agreement and Declaration No. 150-W (par. 6).

However, the instrument clearly does prohibit division of Parcel 1 without the approval of Association. Article 1, section 14, provides: ''No part of said property shall be subdivided . . . unless and until . . . approved in writing by

. . . Association . . . . The approval, however, of the Association shall not be necessary as to any part of said property, the record ownership of which is vested in Palos Verdes Corporation.'' Appellants' claim that under article IV, section 8, ''Assignment of Powers,'' they succeeded to the original right of Corporation to divide Parcel 1 without approval of Association, is without merit. The deed contains neither a description nor an assignment of this or any other special right of Corporation; further, the right to subdivide Parcel 1 without the approval of Association was personal to the Corporation and not intended to pass to its grantee, for, under Agreement and Declaration No. 150-W, once Corporation conveyed the land, whether in parcels or as a unit, ''subject to'' the instrument, ''record ownership'' no longer vested in it (art. I, § 14) and the right to divide Parcel 1 without approval of Association ceased.

Relative to Palos Verdes Properties, it succeeded to all rights and interests of the Corporation in 1954. The interests Properties herein seeks to protect consist of certain valuable road easements and reversionary rights reserved to its predecessor in Agreement and Declaration No. 150-W and the original conveyance. The lower court found that plaintiffs held Parcels 2 and 3, easements for ''road purposes,'' subject to the instrument, and that the burden they might place thereon is limited to a use consistent with that normally associated with one single family dwelling. Appellants claim that, as owners of Parcels 2 and 3, they are entitled to their unrestricted use.

While the owner of Parcels 1, 2 and 3, Corporation, in Agreement and Declaration No. 150-W, reserved to itself various easements and rights of way over and under certain described strips and parcels of land (art. V, §2[a]1, 2) and over certain portions of Parcel 1 (art. V, §2[a]3), for purposes of roads, parkways, public utilities, et cetera (art. V, § 2[b]). In connection with, and following the reservation of these easements and rights of way appears the following restriction: ''The above described premises (Parcel 1) shall constitute a single building site for one single family dwelling.'' (Art. V, § 2[a]4.) In 1952 an easement over Caballeros Road, a portion of Parcel 1, was conveyed to Corporation. Also reserved to the Corporation are certain reversionary rights under which the breach of any restriction, condition or covenant contained in Agreement and Declaration No. 150-W shall cause the land upon which the breach occurs to

revert to it, or its successors, and the Corporation shall have the right of immediate reentry in the event of such breach. (Art. IV, §4.)

The nonexclusive road easements above described, and owned by Properties, are over the major private roads in the Community Area—Portuguese Bend and Crest Roads. In addition to serving Parcel 1 from the Main Gate over Portuguese Bend and Crest Roads, they serve several parcels of land owned in fee by Properties consisting of substantial acreage—"Flying Triangle" (39.5 acres) and "San Pedro Hills" (in excess of 100 acres)—located on the southerly and easterly boundaries and adjoining, but outside of, the Community Area; these parcels may be brought into the Area under a 1950 agreement between Association and Corporation. Properties also owns two parcels in the Area it uses for business and administrative offices; they too are served by the easements. It appears that these nonexclusive road easements held by Properties are valuable; that they are the only practical means of access to "Flying Triangle" and necessary to its development and use, and constitute an essential access road of primary importance to "San Pedro Hills." (Finding No. XXX.)

▆▆ By the original deed Corporation conveyed Parcels 1, 2 and 3 "subject to" the provisions of Agreement and Declaration No. 150-W, incorporated therein by reference, and the restriction that "The above described premises shall constitute a single building site for one single family dwelling"; Parcels 2 and 3 were expressly conveyed therein as easements for "road purposes." They consist of nonexclusive road easements running from the Main Gate over Portuguese Bend and Crest Roads to Parcel 1; they are coextensive with, and pass over more than a mile of, Properties' underlying road easements hereinabove described.

Agreement and Declaration No. 150-W, the provisions of which were expressly incorporated in the deeds, twice specifically set up the single dwelling building restriction. Article III, "Basic Zone Restrictions," relative to character of use, provides: "No . . . structures . . . shall be erected . . . on any . . . parcel, . . . which shall be used, designed or intended to be used for any other purpose other than that of a single family dwelling . . ." (§2); article V, "Local Restriction," and "Easements and Rights of Way," provides: "The above described premises shall constitute a single building site for one single family dwelling." (§ 2[4].) Accordingly the origi-

nal deed and that conveying Parcels 1, 2 and 3 to plaintiffs were made "subject to," not only the provisions of Agreement and Declaration No. 150-W but, specifically, the restriction that the premises "shall constitute a single building site for one single family dwelling." Thus, it is apparent that Parcels 2 and 3 were intended to be, and are appurtenant to Parcel 1, and that their use is limited to that consistent with the use of Parcel 1 as a site for one single family dwelling; and the lower court so found. (Finding No. XXVIII.)

Plaintiffs took title with personal knowledge of the restrictions and limitations on the use of Parcels 1, 2 and 3. On this appeal they speak of dividing Parcel 1 into four lots for construction of a single family dwelling on each, but this is misleading for herein they really seek removal of *all* restrictions which would throw open the 8.6 acres of Parcel 1 to subdivision into an unlimited number of sites not only for private homes but for other types of buildings, the practical result of which would be a change in the use of Parcels 2 and 3 from the very limited one appurtenant to Parcel 1 as a single building site, to an unlimited use which would inevitably and necessarily include an increased burden of travel thereon—in the number and kind of vehicles. This increased burden would obviously be considerably in excess of that originally contemplated over Portuguese Bend and Crest Roads underlying which Properties have road easements which serve the several large parcels owned by it, and over the above rights originally granted by Corporation to the Douglases. It cannot be denied that by Agreement and Declaration No. 150-W and its original conveyance Corporation intended Parcels 2 and 3 to be appurtenant to Parcel 1, *as the same is used as a single building site, in* order to protect its retained interests in the underlying road easements; thus, if Parcel 1 is used for unrestricted purposes, its unlimited use will result not only in an increased burden on Portuguese Bend and Crest Roads but an increased burden of maintenance thereon. (Finding No. XXX.) Whether plaintiffs' proposed use of the road easements is unreasonable is a question of fact *(Pasadena v. California-Michigan etc. Co.,* 17 Cal.2d 576 [110 P.2d 983, 133 A.L.R. 1186]; the record herein supports the lower court's finding that it is.

 "The extent of a servitude is determined by the terms of the grant, or the nature of the enjoyment by which it was acquired." (Civ. Code, § 806.) Referring to this section the Supreme Court in *Whalen v. Ruiz,* 40 Cal.2d 294 [253

P.2d 457] said: ". . . it is well settled that 'both parties have the right to insist that so long as the easement is enjoyed it shall remain substantially the same as it was at the time the right accrued, entirely regardless of the question as to the relative benefit and damage that would ensue to the parties by reason of a change in the mode and manner of its enjoyment.' (*Allen* v. *San Jose Land & Water Co.*, 92 Cal. 138, 141 [28 P. 215, 15 L.R.A. 93]; see *Hannah* v. *Pogue*, 23 Cal.2d 849, 854 [147 P.2d 572].)" (P. 302.) ▮
And where easements are granted for the specific use of an undivided dominant tenement the grantee, while he may partition the latter thereby granting to others rights in the use of the easements, may not do so if it will result in an increase in the burden on the easements. (Civ. Code, § 807.) "'A principle which underlies the use of all easements is that the owner of an easement cannot materially increase the burden of it upon the servient estate or impose thereon a new and additional burden.' (17A Am.Jur. § 115, p. 723.)"

(*Wall* v. *Rudolph*, 198 Cal.App.2d 684, 686 [18 Cal.Rptr. 123]; *Bartholomew* v. *Staheli*, 86 Cal.App.2d 844 [195 P.2d 824].) In *Wall* v. *Rudolph*, *supra*, the court held that the grants were made for road purposes in broad terms which created a general right of way capable of use in connection with the dominant tenement for all reasonable purposes limited by the requirement that the use be reasonably necessary and consistent with the purposes for which the easement was granted which include "normal future development within the scope of the basic purpose (see *C. F. Lott Land Co.* v. *Hegan*, 177 Cal. 169, 173 [169 P. 1035]; *Fristoe* v. *Drapeau*, 35 Cal.2d 5, 9 [215 P.2d 729]; 17A Am.Jur. § 115, p. 723), but not an abnormal development, one which actually increases the burden upon the servient tenement. (Rest., Law of Property, § 484, illus. 3, p. 3021.)" (P. 692.) The court said further with respect to uses in connection with the dominant tenement (pp. 696, 697): "'3 Powell on Real Property, section 405, page 386, says: 'The requirement that the easement involve only a *limited* use or enjoyment of the servient land is a corollary of the nonpossessory character of the interest. If a conveyance purported to transfer to A an *unlimited* use or enjoyment of Blackacre, it would be in effect a conveyance of ownership to A, not of an easement.' To the same effect is Restatement of the Law of Property, section 471, comment e, page 2964. *Chapman* v. *Newmarket Mfg. Co.*, 74 N.H. 424 [68 A. 868], remarks that 'an un-

limited conveyance of an easement is in law a grant of unlimited reasonable use.' To the same effect is 17A, American Jurisprudence, section 113, page 720.''

In order to protect its retained rights in valuable underlying road easements, Corporation in the original deed conveyed Parcels 2 and 3 expressly for ''road purposes'' and therein specifically limited their use as appurtenant to Parcel 1, as it is used as a single family dwelling site. It would not only be contrary to the principle underlying the use of all easements but unfair to now permit plaintiffs, who had full knowledge of the express limitations on the use of Parcels 2 and 3 at the time they were conveyed to them, unlimited use of the easements contrary to the express purpose for which they were granted, and their consequent imposition on Properties' underlying road easements of additional unreasonable burdens. Properties has the right to enjoin such increase in the burden on its road easements.

Contrary to appellant's argument based upon *Kent* v. *Koch,* 166 Cal.App.2d 579 [333 P.2d 411], and *Young* v. *Cramer,* 38 Cal.App.2d 64 [100 P.2d 523], the valuable underlying road easements and reversionary rights owned by Properties constitute sufficient material interest in Parcels 1, 2 and 3 to protect it by suit to enforce the restrictions thereon and secure performance of Agreement and Declaration No. 150-W. (*Rosecrans* v. *Pacific Elec. Ry. Co.,* 21 Cal.2d 602 [134 P.2d 245]; *Faus* v. *Pacific Elec. Ry. Co.,* 187 Cal. App.2d 563 [9 Cal.Rptr. 697].) Agreement and Declaration No. 150-W gives Properties the right, in various ways, to enforce its provisions. (Art. IV, § 6; art. IV, § 10; art. IV, § 4.)

The remaining contentions and arguments, minor in nature, do not justify further extension of this opinion.

For the foregoing reasons the judgment is affirmed.

Wood, P. J., and Fourt; J., concurred.

A petition for a rehearing was denied August 29, 1963, and appellants' petition for a hearing by the Supreme Court was denied September 27, 1963.